Theodore **HANNA**, Thomas Pfeiffer, William Hoyland and Kenneth Reasor, for themselves and as representatives of a class with like interests, Appellants,

v.

Henry **RATHJE**; Donald Hayes; Leroy Vogt; Richard Taylor; Leonard Pallas; Derwood Iverson; Sally Gilbertson; Town of Robins, Iowa; Park Town, L.T.D.; Orval J. Unash, and Marcella Unash, Appellees.

No. 53714.

Supreme Court of Iowa.

Nov. 12, 1969.

William R. Crary, Cedar Rapids, for appellants.

Simmons, Perrine, Albright & Ellwood, Moyer & Bergman, and Nazette & Bromwell, Cedar Rapids, for appellees.

MOORE, Justice.

This is a class action in equity by residents of the Town of Robins against members of the town council and owners of certain real estate seeking to have amendatory zoning Ordinance No. 43 and certain resolutions adopted in conjunction therewith declared illegal and void and to enjoin further action by defendants. The trial court upheld the ordinance and denied plaintiffs the relief sought. Plaintiffs have appealed. We affirm.

The Town of Robins, a part of the Cedar Rapids metropolitan area in Linn County, covers an area of approximately two and a half square miles and at trial time had a population of 635. According to the last census its population was 426. The population density is about 254 persons per square mile, an extremely low population density for a municipality. Its few engineer. It has a voluntary fire department small business establishments have ceased to exist. Only two professionals are employed by the town, an attorney and an ment and one part-time marshall. It has no water or sewer system and as a result fire, sanitary and health problems exist.

Defendants Unash and Park Town, Ltd., own an approximate 100 acre tract of land in the town on which Park Town intends to establish and operate a 500 unit mobile home court. This 100 acre tract is naturally screened from surrounding areas by topography, roads, trees, vegetation and a railroad line We shall refer to it hereafter as the Unash property.

In 1954, acting under the provisions of Code chapter 415, the Robins town council adopted Ordinance No. 4, a zoning ordinance. In section 2 thereof a described one

tract of land was zoned commercial and the rest of the town area was zoned residential. The Unash property was not within the area zoned commercial.

Section 6 of Ordinance No. 4 provides: "Special permit. The town council, by a three-fourths vote of all the members of the council, may issue special permits for non-conforming buildings and occupancy, on condition the applicant for permit files, with the request for such permit, the written consent and approval of 60 per cent of the adjacent property owners within three hundred feet of the proposed building and occupancy. No permit shall be granted for such non-conforming use when sixty percent of the real estate owners in said district residing in said town within 300 feet of the proposed non-conforming structure object thereto."

In January 1968 members of the council met privately and informally with representatives of Park Town, Ltd., which wanted to explore the possibility of developing a mobile home court in Robins. Numerous questions were asked by the councilmen and the company representatives explained the proposed project.

At a regular council meeting February 5, 1968 representatives of Park Town, Ltd., appeared and discussed the proposed mobile home court project and inquired about a location other than the Unash property.

At a regular council meeting April 1, 1968 the attorney for Park Town requested the council to fix the time and place for hearing on the application of defendants Unash and Park Town, Ltd., to rezone the Unash property. A special meeting for the purpose of hearing objections to the rezoning was set for April 24.

At the April 24th meeting some residents of the town expressed objections to the proposed rezoning. A petition signed by 179 taxpayers expressing opposition to establishing a mobile home court on the Unash property was filed. Another petition signed by several taxpayers favoring the rezoning was also filed. Ordinance No. 42, which would rezone the Unash property commercial, was presented. By a 4 to 1 vote the rule requiring reading of the ordinance on three separate days was suspended. By a 3 to 2 vote Ordinance No. 42 was adopted.

At a specially called meeting of the council May 1, 1968 the mayor vetoed Ordinance No. 42. No effort was made by the council to override this veto.

At a regular council meeting May 9, 1968 Ordinance No. 43 was presented. It provided for repeal of section 2 of Ordinance No. 4 and for the enactment as a substitute in lieu thereof a new section 2 which contained description of several tracts to be zoned commercial and designated all other areas of the town as restricted residential. The Unash property was within that described as commercial. A motion to place the ordinance on its first reading was passed.

At a special meeting May 13, 1968 the resignations of the mayor and a councilman were accepted and within a month a new mayor and councilman were elected and took their oaths.

At a regular council meeting June 3 a petition of property owners opposing rezoning of any area within the town limits for the establishment of a mobile home court was filed.

On July 1, 1968 Ordinance No. 43 was placed on second reading. At a regular council meeting August 5, 1968 there was considerable discussion concerning the establishment of a mobile home court. Ordinance No. 45 regulating operation of mobile home courts was adopted after the rule requiring second and third readings was suspended. The council also adopted resolutions approving an agreement with Park Town, Ltd., and approving restrictive covenants in respect to use of the Unash property as a mobile home court. Ordinance No. 43 was then placed on third reading and was adopted by a 3 to 2 vote.

Late on the afternoon of August 14, 1968 the mayor had the marshall serve written notice on members of the council calling a special meeting that evening for the purpose of receiving the mayor's veto of Ordinance No. 43 and the two resolutions adopted August 5. Defendant Taylor, one of the councilmen who had voted in favor of the ordinance and resolutions, was unable to attend and the mayor knew in advance Taylor would probably not be able to do so. At the meeting the mayor vetoed Ordinance No. 43 and the two resolutions.

At the next regular council meeting September 3, 1968 following considerable discussion concerning the proposed mobile home court the council by a 4 to 1 vote overrode the mayor's veto of Ordinance No. 43 and the two resolutions.

This lawsuit attacking the validity of Ordinance No. 43 and the two resolutions was commenced November 4, 1968. It included a prayer for injunctive relief.

■ The trial court filed well prepared findings of fact and conclusions of law wherein he carefully considered plaintiffs' many contentions and thereafter dismissed plaintiffs' petition and taxed costs against them. Several of plaintiffs' contentions are not pursued on this appeal and of course will not be considered by us. A part of a decree on which no appeal is taken by the party adversely affected is not before this court for review. Scott v. City of Waterloo, 223 Iowa 1169, 1171, 274 N.W. 897, 899.

I. This action in equity is reviewable de novo on appeal. Rule 334, Rules of Civil Procedure. Especially when considering the credibility of witnesses we give weight to the fact findings of the trial court but are not bound by them. Rule 344 (f), par. 7, R.C.P.

II. Plaintiffs' first proposition relied on for reversal is the trial court erred in finding section 6 of Ordinance No. 4 need not be followed or complied with and

finding zoning could be changed from restricted residential to commercial by the method followed. Plaintiffs' contention is untenable.

A special permit as referred to in section 6 of Ordinance No. 4 was not requested by defendant Park Town, Ltd. Such a permit for a non-conforming use was not considered nor granted by the town council.

Ordinance No. 43 was an amendment to the existing zoning ordinance. It repealed the entire section which described the areas zoned commercial and residential and in lieu thereof enacted a new section establishing different commercial and residential areas. The council had the right to so amend the ordinance. No claim was made in the lower court or here the change constituted spot zoning.

Code section 366.1 grants to municipal corporations the power to make and publish ordinances " * * * such as shall seem necessary and proper to provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof, * * *."

As pertinent here section 366.2 provides: " * * * An ordinance revising or amending an ordinance or section thereof shall specifically repeal the ordinance or section amended or revised, and set forth in full the ordinance or section as amended or revised. * * *"

Section 366.4 provides for passage of ordinances and resolutions by a majority vote of the council members.

■ The rule is well established that a municipality may amend its zoning ordinance any time it deems circumstances and conditions warrant such action. Anderson v. City of Cedar Rapids, Iowa, 168 N.W.2d 739, 743; Plaza Recreational Center v. City of Sioux City, 253 Iowa 246, 258, 111 N.W.2d 758, 766; Hermann v. City of Des Moines, 250 Iowa 1281, 1284, 97 N.W.2d 893, 895; Brackett v. City of

Des Moines, 246 Iowa 249, 256, 67 N.W.2d 542, 545; 101 C.J.S. Zoning § 86; 58 Am. Jur., Zoning, section 169.

■ Plaintiffs' contention the zoned areas could only be changed by compliance with the provisions of section 6 of Ordinance No. 4 is without merit. It ignores a council's right to amend a zoning ordinance as granted by statute and our established case law.

■ To permit section 6 to be recognized as the exclusive method for permitting introduction of non-residential uses within what was established in 1954 as a restricted district is in direct contradiction to the well-established rule that in legislative matters a town council cannot bind its successors.

McQuillin, Municipal Corporations, 1968 Rev., section 13.03b, page 477, states: "Although a council has the power, unless restricted by charter, to enact an ordinance to take effect after the expiration of the terms of office of its members, it cannot, by ordinance, divest its successor of legislative power."

And in McQuillin, Municipal Corporations, 1969 Rev., section 21.10, pages 205–208, these comments are found: "Quite commonly by express provision of charter or statute a municipal corporation may repeal as well as make and amend ordinances. Specific grant of power to repeal ordinances, however, ordinarily is not necessary since it is the general rule that power to enact ordinances implies power, unless otherwise provided in the grant, to repeal them. * * *

"The power of repeal extends, generally speaking, to all ordinances. Indeed, a municipal corporation cannot abridge its own legislative powers by the passage of irrevocable ordinances. The members of its legislative body are trustees for the public, and the nature and limited tenure of their office impress the ordinances enacted by them with liability to change. One council may not by an ordinance bind itself or its successors so as to prevent free legislation in matters of municipal government. * * *" Like statements are found in 37 Am.Jur., Municipal Corporations, section 197, page 834; 62 C.J.S. Municipal Corporations § 435b(2), page 835; State v. Platner, 43 Iowa 140.

III. Plaintiffs' second assigned proposition for reversal is the trial court erred in finding Ordinance No. 43 was not arbitrary, unreasonable or discriminatory and that the council's action is open to a fair difference of opinion, is fairly debatable and the ordinance is valid.

■ In the enactment of zoning ordinances, including amendments thereto, a city or town exercises vested legislative powers attended by a strong presumption of validity, which means if facially valid, and reasonableness of the enactment is fairly debatable, it must be allowed to stand. In other words, the court will not substitute its judgment for that of the council. Anderson v. City of Cedar Rapids, Iowa, 168 N.W.2d 739, 742; Smith v. City of Fort Dodge, Iowa, 160 N.W.2d 492, 495; Keller v. City of Council Bluffs, 246 Iowa 202, 207, 66 N.W.2d 113, 116, 51 A.L.R.2d 251 and citations in each. The same authorities hold the burden is upon one asserting the invalidity of a zoning ordinance to show in what respect it is arbitrary, or unreasonable, or discriminatory. See also McQuillin, Municipal Corporations, 1965 Rev., sections 25.278, 25.281, 25.295, 25.296.

■ The test of whether a zoning ordinance is arbitrary, unreasonable or discriminatory is whether the means employed in the attempted exercise of the police power have any real, substantial relation to the public health, comfort, safety and welfare, including the maintenance of property values. Anderson v. City of Cedar Rapids, supra; Plaza Recreation Center v. Sioux City, 253 Iowa 246, 253, 111 N.W.2d 758, 763, and citations.

■ The main thrust of plaintiffs' contention is that the council members did not make sufficient investigation regarding Ordinance No. 43 and were not fully informed before casting their votes. In other words they assert the ordinance is arbitrary, unreasonable or discriminatory because more study could have been made of the effects of the ordinance. Plaintiffs have cited no authority in support of this proposition and we have found none. Assuming arguendo such proof could invalidate the ordinance we find the record replete with evidence of discussion, study and consideration of the proposed change in zoning prior to its adoption.

At the time Ordinance No. 43 was introduced Councilman Vogt presented to the council a prepared written statement in support of the ordinance and his concern and consideration of problems involving water, sewer, streets, utilities and public services. On trial he testified regarding discussions of these matters at open council meetings and his personal inspection of the site and matters considered in reaching his decision to support the ordinance.

Councilman Taylor testified concerning investigation and consideration of sewer and well problems existing in the town and the proposed park's advantage and disadvantage in this regard, his discussions with representatives of the county board of health, roads, water available for fire fighting and his personal inspection of the site.

Vogt and Taylor testified they thought development of a mobile home court would contribute badly needed funds to the town which could be used to build a sewer and for this reason they wanted the property rezoned.

■ After careful review of the entire record we agree with this finding by the trial court: "I specifically find that the reasonableness of the town council's actions in adopting the ordinances and resolutions relating to the proposed mobile home

court is a question open to a fair difference of opinion and is fairly debatable."

IV. Plaintiffs' third and last assigned proposition for reversal is the trial court erred in ruling the town council was not required to act to override the mayor's veto at the meeting at which the veto message was received and was within its rights in considering the matter at the next regular council meeting.

Code section 366.5, as pertinent here, provides: "The mayor shall sign every ordinance or resolution passed by the council before the same shall be in force, and, if he refuses to sign any such ordinance or resolution, he shall call a meeting of the council within fourteen days thereafter and return the same, with his reasons therefor. * * * Upon the return of any such ordinance or resolution by the mayor to the council, it may pass the same over his objections, upon a call of the yeas and nays, by not less than a two-thirds vote of the council, * * *."

■ It must be noted section 366.5 specifically limits the time within which a mayor may veto and call a veto message council meeting but it does not specify when the council must consider the matter of overriding the veto. Thus the council must be considered to have a reasonable time to take action. Any other interpretation would effectively withhold from a full council consideration of any veto message. The facts here point out the necessity of a reasonable time to consider an override of the veto as the mayor called the special veto meeting when he knew Councilman Taylor was at work and probably would be unable to attend. We do not agree with plaintiffs' contentions made under this assignment of error.

Plaintiffs failed to meet their heavy burden of proving illegality, The order and judgment of the trial court must be and is affirmed.

Affirmed.

All Justices concur.