**Alex STONE and Martha Stone, Appellants,**

v.

**CITY OF WILTON, Iowa; Wilbert H. Stoelk, Mayor; and Christian L. Graber, Jerry L. Smith, Robert Gust, Max L. Lauser, and Richard L. Garrison, City Councilmen, Appellees.**

**No. 67243.**

Supreme Court of Iowa.

March 16, 1983.

Edward N. Wehr of Wehr & DeLange, Davenport, and John C. Fishburn of Fishburn & Fishburn, Muscatine, for appellants.

Rand S. Wonio of Lane & Waterman, Davenport, and Mark R. Gillett, Wilton, for appellees.

Considered by LeGRAND, P.J.,* and HARRIS, McCORMICK, McGIVERIN and CARTER, JJ.

McGIVERIN, Justice.

Plaintiffs Alex and Martha Stone appeal from the dismissal of their petition for declaratory judgment, injunctive relief and damages in an action regarding defendant City of Wilton's rezoning from multi-family to single-family residential of certain real estate owned by plaintiffs. The issues raised by plaintiffs focus on the validity of the rezoning ordinance and the trial court's striking of plaintiffs' claim for lost profits. We find no error in trial court's rulings and affirm its decision.

This appeal is a zoning dispute involving approximately six acres of land in the city of Wilton, Iowa. Plaintiffs purchased the undeveloped land in June 1979 with the intent of developing a low income, federally subsidized housing project. The project was to consist of several multi-family units; therefore, feasibility of the project depended upon multi-family zoning of the tract. At the time of purchase approximately one-fourth of plaintiffs' land was zoned R–1, single-family residential, and the remainder was zoned R–2, multi-family residential.

After the land was purchased, plaintiffs incurred expenses for architectural fees and engineering services in the preparation of plans and plats to be submitted to the city

* Senior Judge.

council and its planning and zoning commission. In addition, plaintiffs secured a Farmers' Home Administration (FHA) loan commitment for construction of the project.

This suit is based primarily on actions of city officials between December 1979 and June 1980. We will discuss only the most pertinent events now and will relate other facts later when we consider the issues raised by plaintiffs.

In December 1979 plaintiffs filed a preliminary plat for the project with the city clerk. In March 1980, following a public meeting, the planning and zoning commission recommended to the city council that land in the northern part of the city be rezoned to single-family residential due to alleged inadequacies of sewer, water and electrical services. The rezoning recommendation affected all of plaintiffs' property plus tracts owned by two other developers. Plaintiffs' application on May 21, 1980, for a building permit to construct multi-family dwellings was denied due to the pending rezoning recommendation.

In May 1980, plaintiffs filed a petition against the city seeking a declaratory judgment invalidating any rezoning of their property, temporary and permanent injunctions to prohibit passage of any rezoning ordinance, and in the event of rezoning, $570,000 damages for monies expended on the project, anticipated lost profits and alleged reduction in the value of plaintiffs' land. The temporary injunction was denied.

In accordance with the recommendation of the planning and zoning commission, the city council passed an ordinance rezoning the land from R–2 to R–1 in June 1980. Following the council's rezoning decision, the planning and zoning commission approved plaintiffs' preliminary plat.

This action proceeded to trial in November 1980.

■ I. *Scope of Review.* Normally, zoning disputes reach us on appeal from a trial court's judgment on a writ of certiorari to the appropriate board of adjustment or the board making the zoning decision. In such cases our review is the same as from judgment following a special verdict by a jury. *Grandview Baptist Church v. Zoning Board of Adjustment of the City of Davenport,* 301 N.W.2d 704, 707 (Iowa 1981). The uniqueness of the procedural background of this case, however, necessitates a different standard of review.

This case was comprised of three distinct elements: a petition for a declaratory judgment as to validity of the zoning ordinance, a request for temporary and permanent injunctions, and a request for money damages—an action ostensibly combining law and equity. The fact that a declaratory judgment and injunctive relief were sought is not dispositive of whether this action is at law or in equity. *Green v. Advance Homes, Inc.,* 293 N.W.2d 204, 208 (Iowa 1980) (nature of action seeking injunctive relief determined in light of relief sought and nature of error claimed on appeal); *Freese Leasing, Inc. v. Union Trust and Savings Bank,* 253 N.W.2d 921, 925 (Iowa 1977) (nature of action for declaratory judgment determined by examination of the pleadings, the relief sought and the nature of the case).

■ The present case was denominated and tried as a matter in equity throughout the proceedings and the trial court's ruling resembles a ruling in equity. The main thrust of plaintiffs' case, both in the trial court and on appeal, is that the rezoning of their land is constitutionally and statutorily invalid. Monetary damages were sought as an alternative to injunctive relief, but on appeal the only issue concerning damages is whether the trial court erred in striking plaintiffs' claims for lost profits. In light of these facts we conclude that this case is best treated as one in equity. Our review, therefore, is de novo. Iowa R.App.P. 4.

II. *Validity of the rezoning ordinance.* Plaintiffs raise several constitutional and statutory challenges to the validity of the rezoning ordinance. We have reviewed all of plaintiffs' contentions, but for the sake of clarity our discussion departs substantially from the manner in which the issues were briefed by the parties.

■ Land use restrictions (such as at issue here) reasonably related to the promotion of the health, safety, morals, or general welfare repeatedly have been upheld even though the challenged regulations destroyed or adversely affected recognized real property interests or flatly prohibited the most beneficial use of the property. *See Agins v. City of Tiburon,* 447 U.S. 255, 262, 100 S.Ct. 2138, 2142, 65 L.Ed.2d 106, 113 (1980); *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 125, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631, 649, rehearing denied, 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 198 (1978). Hence, such laws, when justifiable under the police power, validly enacted and not arbitrary or unreasonable, generally are held not to be invalid as taking of property for public use without compensation. However, some instances of government regulation are "so onerous as to constitute a taking which constitutionally requires compensation." *Goldblatt v. Town of Hemptstead,* 369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L.Ed.2d 130, 133 (1962); *see e.g. Kasparek v. Johnson County Board of Health,* 288 N.W.2d 511 (Iowa 1980) (new regulations relating to private sewage disposal system permits constituted a taking because property owners would be deprived of *any* reasonable use of their land, not merely the most beneficial use).

■ A. We focus initially on the general claims which plaintiffs make concerning the validity of the rezoning. Controlling our review of the enactment's validity is the principle that the validity of a police power enactment, such as zoning, depends on its reasonableness; however, "[the Supreme Court] has often said that 'debatable questions as to reasonableness are not for the courts but for the legislature....'" *Goldblatt,* 369 U.S. at 595, 82 S.Ct. at 990, 8 L.Ed.2d at 134.

The zoning ordinance at issue was passed as a general welfare measure. It affected not only Stones' proposed housing project, but also land owned by Land, Ltd. and Wilton Sunset Housing Corporation, which intended to erect multi-family housing for the elderly. The city council's stated reasons for rezoning this section of the city from R–2 to R–1 were as follows: (1) The existing zoning was no longer appropriate to the current and anticipated growth and development of the area; (2) the existing zoning would create a greater density than now appropriate; (3) the existing zoning would create a traffic and pedestrian flow too great for the existing street and sidewalk systems in the area; and (4) the city's electrical, water and sewer systems were inadequate for a concentration of multifamily dwellings in that area of town.

■ Plaintiffs, however, claim the above were mere pretext. They contend that the council disregarded its comprehensive plan. They further argue that the council was prompted by a desire to advance the private economic interests of a member of the planning and zoning commission and by racial discrimination against the "type" of persons who might live in plaintiffs' housing project. The trial court disagreed and so do we. "If the [city council] gave full consideration to the problem presented, including the needs of the public, changing conditions, and the similarity of other land in the same area, then it has zoned in accordance with a comprehensive plan." *Montgomery v. Bremer County Board of Supervisors,* 299 N.W.2d 687, 695 (Iowa 1980). On the record in this case, we cannot conclude that the council's stated reasons, which are recognized as valid reasons for zoning, Iowa Code §§ 414.2, .3 (1981), were mere pretext.

■ The apartment-owner member of the planning and zoning commission, whose interests, plaintiffs claim, were a basis for the rezoning, did not participate in the commission's resolution recommending rezoning. Thus the ordinance passed by the city council cannot be declared invalid due to an alleged conflict of interest. *See* Iowa Code § 362.6 (1981) ("A measure voted upon is not invalid by reason of conflict of interest in an officer of the city, unless the vote of the officer was decisive to passage of the measure.").

Plaintiffs also suggested that questions concerning the "types" of tenants in the housing project were racially motivated and

affected the council's decision to rezone. The evidence is clear that the Wilton city council was faced with a number of competing concerns in regard to the proper zoning of the area of the city in which plaintiffs' land was situated. It is precisely because legislative bodies, like this city council, are faced with balancing numerous competing considerations that courts refrain from reviewing the merits of their decisions if at least a debatable question exists as to the reasonableness of their action.

■ "But racial discrimination is not just another competing consideration. When there is a proof that a discriminatory purpose has been a motivating factor in the decision, this judicial deference is no longer justified." *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 265–66, 97 S.Ct. 555, 563, 50 L.Ed.2d 450, 465 (1977). We are unable to find sufficient evidence in the record to conclude that plaintiffs carried their burden of proof. We find that discriminatory purpose was not a motivating factor in the council's decision to rezone.

■ In sum, zoning is not static. *Anderson v. City of Cedar Rapids,* 168 N.W.2d 739, 743 (Iowa 1969). A city's comprehensive plan is always subject to reasonable revisions designed to meet the ever-changing needs and conditions of a community. We conclude that the council rationally decided to rezone this section of the city to further the public welfare in accordance with a comprehensive plan.

■ Plaintiffs raise one additional claim to the validity of the ordinance; they say that the planning and zoning commission failed to approve their preliminary plat in the 30-day period required by the city ordinance. While this is true, plaintiffs themselves had a hand in the many delays. They acquiesced to the original meeting being held more than 30 days after filing of the plat and then failed to attend the meeting. At no time did plaintiffs seek to invoke the city ordinance which allowed the city council to act on the plat if the planning and zoning commission failed to take timely action. We infer that plaintiffs let the delays work to their benefit while they were engaged in dealing with the FHA's request for a bi-state review of their project. This review was prompted by plaintiffs increasing from 24 to 28 the number of apartment units in their proposal to the FHA for financing. The plat which eventually was approved by the planning and zoning commission had been platted in conformance with R–1 zoning and thus remains available for plaintiffs' use under the current zoning scheme.

The delay in the approval of their plat did not prejudice Stones.

B. As stated earlier, the inevitable restrictions on individual uses of property which accompany zoning normally do not constitute a taking. Plaintiffs, however, claim to have had a vested right in developing their property as subsidized, multi-family housing and, therefore, the rezoning allegedly amounted to a taking of this right. Consequently, they contend the zoning ordinance should be inapplicable to their project. We disagree.

The record shows that a factor in the Stones' choice of property was zoning which permitted multi-family residences. Immediately after purchasing the property in Wilton, plaintiffs made certain expenditures in preparation for obtaining the necessary government financing and in order to comply with city ordinances for platting and building permits. These expenditures totaled approximately $7,900, plus the time and effort expended personally by the plaintiffs.

■ The standard for determining if a property owner has vested rights in a zoning classification was set forth in *Board of Supervisors of Scott County v. Paaske,* 250 Iowa 1293, 1300, 98 N.W.2d 827, 831 (1959):

It is impossible to fix a definite percentage of the total cost which establishes vested rights and applies to all cases. It depends on the type of the project, its location, ultimate cost, and *principally the amount accomplished under conformity.* Each case must be decided on its own merits, taking these elements into consideration.

(Emphasis added.) Prior to rezoning, Paaske purchased a parcel of land onto which he planned to move five houses. The county granted him a permit to move the houses. Paaske excavated the basements for four houses; placed a septic tank underground for the fifth house; laid concrete footings for the basement of two houses; entered into a contract for the building of the foundations under all five houses, and placed a substantial amount of building materials on the property before the land was rezoned. We concluded that Paaske's endeavors prior to rezoning were so substantial that he had a vested right in completing his project. *See also Crow v. Board of Adjustment of Iowa City*, 227 Iowa 324, 288 N.W. 145 (1939) (contract for construction of new building, purchase of material and partial completion of excavation and foundation work prior to revocation of building permit created vested rights); *c.f., Brackett v. City of Des Moines*, 246 Iowa 249, 261–62, 67 N.W.2d 542, 548 (1954) (while owned by plaintiff, land zoned commercial and approximately twenty-five years later rezoned residential; just prior to rezoning plaintiff obtained a building permit for a commercial building, had plans drawn up and took bids for construction but no work done prior to revocation of permit; "in the absence of any actual construction by plaintiff under his building permit its revocation was not in violation of his vested rights").

In the present case, one of the factors leading to the purchase of this land in Wilton was the fact that it was zoned for multi-family residences. Plaintiffs secured funding from the FHA and engaged the services of an architect and engineer who drew up plans and plats. But these were only the most preliminary steps towards construction. The architect's plans were not the working blueprints of a contractor. The trial court stated they were "the kind [of plans] that one could find in *Better Homes and Gardens* [magazine]." No construction bids were sought and no construction contracts were let. No materials were placed on the site and no construction or earth work was started. We agree with the trial court that plaintiffs' efforts and expenditures prior to rezoning were not so substantial as to create vested rights in the completion of the housing project on that particular tract of land in Wilton.

Under the facts of this case, plaintiffs had to prove they had a vested right to complete their intended project in order to argue that the rezoning constituted a taking. All that the rezoning did was to deprive plaintiffs of what they considered to be the land's most beneficial use. If, as we have found, the ordinance is a valid exercise of police power, the fact that it deprives the property of its most beneficial use does not render it an unconstitutional taking. *Goldblatt*, 369 U.S. at 592, 82 S.Ct. at 989, 8 L.Ed.2d at 133.

"In determining where a zoning regulation ends and a taking of property begins, the test is essentially one of reasonableness." C. Rhyne, *The Law of Local Government Operations*, § 26.16 at 745 (1980). *See Kasparek*, 288 N.W.2d at 517–20; *Keller v. City of Council Bluffs*, 246 Iowa 202, 209–12, 66 N.W.2d 113, 117–19 (1954). We do not believe that rezoning a portion of plaintiffs' property from R–2 to R–1 exceeded the bounds of reasonableness. The city council clearly could have reasonably believed that the general welfare interests of the community outweighed the Stones' investment interest in constructing subsidized, multi-family housing.

Even if the testimony of Stones' expert is accepted, the change in zoning resulted in, at most, a 42% decrease in value of their property. Such economic impact does not constitute a taking in light of the council's reasonable belief that the public welfare required a change in zoning. *See Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926) (75% diminution in value caused by zoning law did not constitute a taking). Other evidence, however, showed the rezoning to R–1 only slightly affected the fair market value of plaintiffs' land.

Plaintiffs' claim to a right to realize their investment expectations overlooks

the fact that "rights granted by legislative action under police power can be taken away when in the valid exercise of its discretion the legislative body sees fit." *Keller,* 246 Iowa at 212, 66 N.W.2d at 119. At most, the decision of the council "took" from plaintiffs a sizeable tax shelter. Because the reasonableness of the council's decision to rezone plaintiffs' property clearly is at least a fairly debatable question, we cannot substitute our view of reasonableness for that of the council.

We hold that the ordinance which rezoned an area of the city of Wilton that included a portion of plaintiffs' land is valid and applicable to plaintiffs' land and proposed project.

III. *Lost Profits.* The last contention of Stones, which we will discuss, is the trial court's striking of their claim for lost profits. We hold that in order to claim lost profits, plaintiffs would have to prove that they had a vested right in completing the project and that the rezoning constituted a taking. Plaintiffs have failed to prove either. Consequently, on this appeal, we do not reach the issue of the propriety of the trial court striking plaintiffs' claim for lost profits.

IV. *Appellate rules violation.* Unfortunately, we must again comment on a matter which does not concern the merits of the appeal. In *State v. Oppelt,* 329 N.W.2d 17, 21 (Iowa 1983), we drew attention to the recurring practice in criminal appeals of printing virtually the entire transcript in the appendix. This practice is also prevalent in many civil appeals and is not made tolerable merely because the printing costs are borne by the client rather than the county.

Iowa R.App.P. 15(a) requires that the appendix contain only the relevant portions of the record. This requirement envisions that the parties' attorneys will carefully edit the record so that only the most pertinent portions are included in the appendix. Such was not the case with the appendix submitted with this appeal.

Just as rule 15(a) is intended to ease the reading burden on the court in order to facilitate the appellate process, Iowa R.App.P. 14(e) is also intended to facilitate the appellate process in another way. Rule 14(e) requires that parallel citations be given for all case cites, both in the list of authorities and throughout the body of the brief. Not only is this the citation form acknowledged throughout the legal community, but it is a necessary timesaver for judges and attorneys who do not have ready access to each and every reporter system. Again, compliance with this rule is necessary for the efficient operation of our legal system.

This case is just an example of the too frequent failure to observe our appellate rules. This comment is directed to all appellate counsel who violate these and other appellate rules. In the future, in appropriate cases we will consider rejecting briefs and appendices which flagrantly violate the rules, and we will further consider ordering that the cost of the resubmitted, complying briefs and appendices be borne by the errant counsel.

AFFIRMED.