Ella M. NEUZIL, Gregory B. Neuzil, and Carol F. Neuzil, Appellants,

v.

CITY OF IOWA CITY, Iowa, Appellee.

No. 88–953.

Supreme Court of Iowa.

Jan. 24, 1990.

William L. Meardon of Meardon, Sueppel, Downer & Hayes, Iowa City, for appellants.

Richard J. Boyle, Asst. City Atty., for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, LAVORATO and SNELL, JJ.

LAVORATO, Justice.

In this law action, the district court concluded a zoning amendment that downzoned undeveloped property was valid. The property owners appealed. We transferred the case to the court of appeals, which reversed. Because we think the district court was right, we vacate the decision of the court of appeals and affirm the judgment of the district court.

I. *Background Facts and Proceedings.*

The Neuzil family owns an eight and one-half acre tract of land (tract) southwest of the University of Iowa Hospitals and Clinics in Iowa City. They have owned the tract since 1941. Mrs. Ella Neuzil and a son Gregory occupy houses on the tract. There also is a rental house there, but the remainder of the tract is undeveloped.

Originally the tract was part of University Heights, a municipality immediately west of Iowa City. But in 1956 Iowa City annexed the tract. The tract is shown in the following exhibit.

In 1962 Iowa City adopted a comprehensive zoning plan known as the Bartholomew Plan. Under the plan the tract was zoned R–3A. The R–3A zoning allowed multi-family dwellings and permitted up to forty-four units per acre.

In 1972 the tract was rezoned from R–3A to R–3. The R–3 zoning also allowed multi-family dwellings but limited the number of units per acre to fourteen.

In 1978 Iowa City adopted a new comprehensive plan. In adopting this plan the city passed the following resolution:

Whereas, the 1962 Comprehensive Plan may no longer reflect present conditions in Iowa City or its goals and policies, and

Whereas the Comprehensive Plan Coordinating Committee has held public meetings, studied community needs and drafted a new Comprehensive Plan which states goals, objectives and policies for future growth.

Now Therefore Be It Resolved by the City Council of the City of Iowa City, that:

The Comprehensive Plan be adopted by the City Council of the City of Iowa City to provide a basis for the decisions in the regulation of land use and the construction of trafficways and community facilities.

There was no new zoning concerning the tract pursuant to the 1978 Comprehensive Plan. However, this plan recommended that the tract be limited to residential development at a density of eight to sixteen dwellings per acre.

In 1983 Iowa City updated its comprehensive zoning plan. The tract was then zoned RM–12, a zoning that had the same limitations as the R–3 zoning. For all practical purposes the tract was under the same use restrictions as it was in 1972.

In 1985 after many requests from area residents, the tract was again downzoned, this time to RS–8. RS–8 zoning is for

single-family or duplex dwellings and permits only eight units per acre.

The Neuzil family has consistently objected to the downzoning. Each time the family claimed that the proposed zoning would decrease the value of the tract. The family, however, had agreed not to sell or begin developing the tract for commercial purposes while Ella was still alive.

In the 1960s and 1970s much of the area surrounding the tract was highly developed. The tract borders University Heights on the north and west side. In fact, the only access to the tract is through streets from University Heights although the tract is in Iowa City. The land abutting the tract in University Heights is single-family residential. The land to the east and south of the tract consists of single-family dwellings. A ravine runs east and west on the tract and drains into Melrose Lake, which is on the land immediately east of the tract. The land (designated as the "Smith land" on the exhibit map) immediately east of the tract was also downzoned to RS–8 in 1985. But its owners did apply for, and received, a variance to permit multi-family occupancy.

Because the tract was undeveloped, the neighbors often used it for recreational purposes. In fact, residents in the area tried unsuccessfully to get University Heights and Iowa City to purchase the tract for a neighborhood park.

Shortly after the 1983 zoning ordinance was adopted, owners of the Smith land were making plans to develop their land as permitted under the then existing zoning ordinance. Residents from University Heights and Iowa City who lived close to the tract organized the Melrose Lake Association.

Because the association did not want more multi-family housing in the area, it petitioned the Iowa City Planning Commission to downzone the tract, as well as the Smith land to RS–8. When the commission refused, the association petitioned the city council of Iowa City to downzone the tract.

The city council held two public hearings on the petition in March and April 1985. Proponents and opponents of the proposed downzoning were heard. On June 4, 1985, the council voted to downzone the tract to RS–8.

The city council drafted its findings and reasons for approving the downzoning after the Neuzils filed the present lawsuit. The district court, however, found that the council had indeed relied on these reasons in downzoning the tract. These reasons included the following:

1. The Neuzil tract contains 8.5 acres of land, with direct access only into streets through residential neighborhoods.

2. The Neuzil tract is surrounded on three sides by single-family residential neighborhoods, those on the north and west being located in the Town of University Heights. On June 4, 1985, the property to the east of the Neuzil tract was also rezoned to RS–8.

3. The streets in the single-family neighborhood abutting the Neuzil tract were not designed to handle heavy amounts of traffic, and the other streets in the area are already heavily traveled.

4. Development of the Neuzil tract at the maximum density permitted in the RM–12 zone would allow construction of approximately 126 additional dwelling units raising the potential for generating approximately 1550 motor vehicle trips daily.

5. The allowable density on the Neuzil tract will reduce the potential increase to traffic congestion on the streets in the immediate area.

6. The area is shown on the City's Comprehensive Plan as being developed at 8 to 16 dwellings per acre, and the RS–8 zoning is consistent with that Plan.

7. Multi-family development of the tract, at the density permitted in the RM–12 zone, would have a negative impact on the value of property surrounding the tract. Development of the density permitted in the RS–8

zone should help maintain the value of neighboring properties.

8. The Neuzil tract contains a pond and two large, partially wooded ravines, and the property immediately to the east of the Neuzil tract contains Melrose Lake, an environmentally sensitive and important feature of the area.

9. Storm water runoff occasionally causes Melrose Lake to overflow, floods areas downstream, and contributes to pollution of the lake.

10. Development at a lower density will reduce the magnitude of the increase in Melrose Lake drainage, flooding and pollution problems, but will still permit development which is sensitive to the fragile environment.

Following the 1985 rezoning, the Neuzils brought this suit against Iowa City, seeking a declaratory judgment and damages. They wanted the 1985 downzoning declared void as unreasonable. They also sought damages based on claims of tortious interference with business opportunities, an unconstitutional taking without just compensation, and inverse condemnation. The suit was filed at law and tried to the court. On the day of trial, the Neuzils withdrew their inverse condemnation claim.

The district court found that the 1985 downzoning amendment was reasonable and that the Neuzils had not proven their claims of tortious interference or civil rights violation. The Neuzils appealed, raising one issue: Was the 1985 downzoning amendment valid under the circumstances?

The court of appeals, using a de novo review, reversed. We granted the city's petition for further review, and the case is now before us.

## II. *Scope of Review.*

■ We review a case according to the way it was tried in the district court. If it was tried as an equity case, our review is de novo. If it was tried as a law case, our review is for errors at law. *Bricker v. The*

*Maytag Co.,* 450 N.W.2d 839, 840–41 (Iowa 1990).

Here, the Neuzils filed the suit at law. The district court treated the case as a law action throughout the litigation. The district court ruled on all trial objections as required in a law action. In addition, the district court stated explicitly in its ruling that the action was being decided as a law action. So our proper scope of review is for errors at law.

Because our review is for errors at law, the district court's findings of fact have the effect of a special verdict. Iowa R.App.P. 4. These findings are binding on us if they are supported by substantial evidence. Iowa R.App.P. 14(f)(1). Evidence is substantial if reasonable minds would find it adequate to reach a conclusion. *Johnson v. Dodgen,* 451 N.W.2d 168, 171 (Iowa 1990).

We construe the district court's findings broadly and liberally. In case of ambiguity, we construe the findings to uphold rather than to defeat the judgment. *Rouse v. State,* 369 N.W.2d 811, 813 (Iowa 1985). We are not, however, bound by the district court's determination of law. So we are free to decide whether the district court's findings were induced by legal error. *Id.* at 813.

## III. *Validity of the 1985 Amendment Downzoning the Tract.*

■ Zoning is an exercise of the police powers delegated by the State to municipalities. Iowa Code § 414.1 (1985). A zoning ordinance, including any amendments to it, carries a strong presumption of validity. This means that if the ordinance is facially valid and the reasonableness of the ordinance is fairly debatable, it must be allowed to stand. *Anderson v. City of Cedar Rapids,* 168 N.W.2d 739, 742 (Iowa 1969). Stated another way,

[t]he validity of an ordinance is said to be fairly debatable when for any reason it is open to dispute or controversy on grounds that make sense or point to a logical deduction that in no way involves its constitutional validity, and validity is fairly debatable where reasonable minds

may differ, or where the evidence provides a basis for a fair difference of opinion as to the constitutionality of the ordinance or its application to particular property.

1 Anderson, *American Law of Zoning* 3d, § 3.20, at 137 (1986) (citations omitted). So "if there is some basis for the ordinance ... and there is room for two opinions, the challenged ordinance is valid." *Id.*

■ An ordinance is valid if it has any real, substantial relation to the public health, comfort, safety, and welfare, including the maintenance of property values. *Anderson v. City of Cedar Rapids*, 168 N.W.2d at 742; Iowa Code § 414.1. In applying this test, the court's prime consideration is the ordinance's general purpose and not the hardship of an individual case. *Id.*

■ Even though a challenged zoning ordinance adversely affects a property interest or prohibits the most beneficial use of the property, a court should not, for that reason alone, strike it down. *Stone v. City of Wilton*, 331 N.W.2d 398, 402 (Iowa 1983). This rule applies to the original zoning ordinance and amendments to it because we recognize that zoning is not static. *Id.* at 403.

■ Iowa law requires municipalities to pass all zoning ordinances in accordance with a comprehensive plan. Iowa Code § 414.3. Among other things, such ordinances should be designed to encourage efficient urban development patterns; to lessen congestion in the streets; to service the public from fire, flood, panic, and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; and to avoid undue concentration of population. *Id.* In passing such ordinances a municipality is required by law to give

reasonable consideration ... to the character of the [area in question] and the peculiar suitability of [the area] for particular uses, and with a view to conserving the value of buildings and encourag-

ing the most appropriate use of land throughout [the] city.

*Id.*

A change in conditions sometimes calls for a change in plans. For this reason, a property owner has no vested right to continuity of zoning of the general area in which the owner resides. Likewise, the owners of property adjacent to a district which is restricted to a particular use have no vested right in the continuation of that use when the public interest dictates otherwise.

Anderson, § 4.26, at 286.

■ A municipality's power to amend zoning ordinances does have some restrictions. Generally, the municipality may not "amend a comprehensive zoning law to remove or impose more or less onerous restrictions upon a small tract or lot similar in character and use to the surrounding property." *Hermann v. City of Des Moines*, 250 Iowa 1281, 1286–87, 97 N.W.2d 893, 896 (1959). A zoning amendment reflecting such a discrepancy in similarly-situated property is discriminatory. *Id.* This type of regulation is called spot zoning and should be upheld only if there are "substantial and reasonable grounds or basis" for the discriminatory treatment. *Id.* 97 N.W.2d at 897.

■ Nor may the municipality downzone property to the point that the property cannot be improved with any development that would be economically feasible. *Kempf v. City of Iowa City*, 402 N.W.2d 393, 400 (Iowa 1987). In these circumstances the downzoning amounts to an unconstitutional taking. *Id.* at 400–01. Such a result is another way of saying that the ordinance, as applied to the particular property, is unreasonable.

The Neuzils did not contend in the district court that the 1985 downzoning amendment constituted spot zoning. Although the Neuzils did claim the amendment constituted inverse condemnation, they withdrew that claim on the day of trial.

In the district court the Neuzils tried the case on the theory that the 1985 rezoning

amendment was unreasonable, arbitrary, and capricious. In support of their theory the Neuzils urged a number of reasons why the amendment was unreasonable. We restrict our review to that theory and to those reasons.

■ The district court noted that for the Neuzils to prevail the court would have to adopt the Maryland rule on rezoning. The district court properly refused to do so, recognizing that it was bound to follow our pronouncements on the subject.

Under the Maryland rule once land is zoned it can only be rezoned to correct an original error or because of a change in circumstances. *Northwest Merchants Terminal v. O'Rourke*, 191 Md. 171, 189–193, 60 A.2d 743, 752–53 (1948). Undergirding the rule is the presumption of reasonableness as to the original ordinance. *Id.* Moreover, if the question of correctness or change is fairly debatable, the court will not substitute its judgment for that of the zoning authority. *Wakefield v. Kraft*, 202 Md. 136, 147, 96 A.2d 27, 29 (1953). Such an approach gives the original zoning regulation a greater presumption of correctness than the amendment.

After surveying cases concerning the Maryland rule, one writer observed that
the greatest drawback in using the rule is that it completely thwarts the efforts of legislative or zoning authorities in the absence of satisfaction of [the "mistake or change" rule]; there are many circumstances where change is desirable, but impossible, due to the rule.

H. Goldman, *Zoning Change: Flexibility v. Stability*, 26 Md.L.Rev. 48, 51 (1966) [hereinafter Goldman]. The facts in one Maryland case illustrate exactly what the writer means. *See MacDonald v. Board of County Comm'ns for Prince George's County*, 238 Md. 549, 210 A.2d 325 (1965). In *MacDonald* the property in question was zoned single family residential but had never been developed. As such there could be no showing of a change in condition. The developers wanted to build high-rise apartments on the land. The zoning board decided this might be a better use for the land, but no one had been able to prove the

original zoning was erroneous when passed. As the writer concluded,
[t]he reason for the change [in *MacDonald*] was evident—*ideas* had changed. A more modern jurisdiction would have allowed the change had the proponents shown the amendment to be reasonable and not arbitrary or capricious; the Maryland court, not able to satisfy the "mistake or change" test, had no choice but to strike down the amendment, no matter how reasonable and desirable it appeared to be.

Goldman at 52.

In contrast our rule on amending zoning ordinances is considered more liberal and flexible. Under our approach we give the original zoning ordinance no greater presumption of validity than the amendment. The same standards used to justify original zoning are used in determining the propriety of amendatory ordinances. *Id.* at 53–54. We expressed our view on this point in *Keller v. City of Council Bluffs*, 246 Iowa 202, 207–08, 66 N.W.2d 113, 116–17 (1954):
We are of the opinion the governing body of a municipality may amend its zoning ordinances anytime it deems circumstances and conditions warrant such actions, and such an amendment is valid if the procedural requirements of the statute are followed and it is not unreasonable or capricious nor inconsistent with the spirit and design of the zoning statute. The burden is upon the plaintiffs attacking the amendment to establish that the acts of the council were arbitrary, unreasonable, unjust and out of keeping with the spirit of the zoning statute.

*See also* Iowa Code § 414.5 (municipality "may from time to time ... amend, supplement, change, modify, or repeal" zoning ordinances).

■ This liberality and flexibility expressed in *Keller* is consistent with the rule that in legislative matters a municipality may not bind its successors. *Hanna v. Rathje*, 171 N.W.2d 876, 880 (Iowa 1969). Such a rule is necessary because city council members are "trustees for the public." *Id.* So the determination of when the pub-

lic's interest requires a change in zoning must be within the discretion of the municipality. Anderson, § 4.27 at 291. Because of this discretion, courts reviewing zoning amendments should not substitute their judgment as to the wisdom or propriety of the municipality's action when the reasonableness of the amendments is fairly debatable. *Anderson v. City of Cedar Rapids*, 168 N.W.2d at 742.

 Here we need to review the written reasons the city gave for enacting the 1985 amendment that downzoned the tract. Only after such a review can we determine whether circumstances and conditions warranted the downzoning.

The district court found that the city had relied on the written reasons in downzoning the tract, that the reasons were proper ones to consider, and that the reasons were "debatably reasonable." The court concluded it could not, therefore, strike down the amendatory ordinance. For reasons that follow, we think there is substantial evidence to support the district court's findings.

The Neuzils cite their own reasons why the 1985 downzoning amendment is unreasonable, arbitrary, and capricious. They include the following:

1. The tract has proximity to the largest employer—The University of Iowa Hospitals and Clinics—in Johnson County, which is within walking distance.

2. City utilities are available.

3. The size of the tract will permit large-scale development and preserve open space.

4. Housing on this tract will help reduce the need for private automobile transportation. The city bus service is one block away.

5. Public schools are in the vicinity.

6. There are three access streets to the tract.

7. The tract is adjacent to other multi-family dwellings.

8. The area has been zoned for multi-family use since 1962.

9. Prior to the 1985 rezoning, there were no changes in the area or environment since the adoption of the most recent Iowa City Zoning Ordinance.

All these reasons are arguments for developing the tract with multi-family units. However, balanced against Neuzils' reasons are the city's reasons for downzoning the tract. All the city's reasons are statutorily recognized. Moreover, there is substantial evidence to support each one.

While the tract was originally zoned for multi-family dwellings, the actual development of the surrounding area is mostly single-family and duplex dwellings. So the challenged amendment seeks to place the tract in conformity with other land in the same area. *See* Iowa Code § 414.3 (municipality is required to give reasonable consideration to the character of the area).

The city found that the prior zoning—RM–12—would increase the traffic flow in the area past its current accommodation. According to the city's thinking, the downzoning would reduce the potential for such burdensome traffic increases. Traffic considerations are reasonable grounds, under the city's police power, for amending zoning ordinances. *See* Iowa Code § 414.3 (zoning ordinances should be designed to lessen congestion in the streets).

Additionally, the city found that downzoning would help maintain the current property values in the area—a consideration that bears a substantial relationship to the public's health, safety, welfare and comfort. *See Anderson v. City of Cedar Rapids*, 168 N.W.2d at 742; Iowa Code § 414.3 (municipality must give reasonable consideration to conserving the value of buildings). Finally, the city considered the environmental impact of the current zoning. Consideration included both aesthetic impact and flood-pollution consequences of the prior RM–12 zoning. These two considerations take into account the safety and security of the area as well as the general public's comfort and welfare. *Anderson v. City of Cedar Rapids*, 168 N.W.2d at 742. *See* Iowa Code § 414.3 (zoning ordinance

should be designed to service the public from flood).

One fact that bears on our analysis is that the 1978 Comprehensive Plan contemplated limiting development of the tract at eight to sixteen dwellings per acre. As the city recognized in its written reasons, the 1985 downzoning amendment is consistent with what the city had been contemplating since 1978. So the Neuzils should not have been surprised that what was contemplated in 1978 occurred in 1985. What the city did in 1985 was in keeping with the spirit of the 1978 Comprehensive Plan.

What immediately becomes apparent from our analysis is that there is a difference of opinion between the Neuzils and the city. Differing opinions are the crux of the "fairly debatable" rule—"if there is some basis for the ordinance ... and there is room for two opinions, the challenged ordinance is valid." Anderson, § 3.20, at 138.

The Neuzils' reasons boil down to this: the 1985 downzoning amendment prohibited the most beneficial use of the tract. As we said, this is not enough to brand a zoning ordinance as unreasonable, capricious or discriminatory. *Stone v. City of Wilton*, 331 N.W.2d at 402. The Neuzils offered no proof, as the plaintiffs did in *Kempf*, that the tract could not be improved with any development that would be economically feasible. *See Kempf v. City of Iowa City*, 402 N.W.2d at 400.

IV. *Disposition.*

The Neuzils' burden on appeal is a heavy one: to establish, as a matter of law, that the 1985 downzoning amendment was unreasonable, capricious or discriminatory. We think they failed to do so. Under the facts as found by the district court, we are convinced that the city acted within its authorized police power in downzoning the tract in 1985.

Accordingly, we vacate the decision of the court of appeals and affirm the judgment of the district court.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.

All justices concur except SCHULTZ, J., who dissents.

SCHULTZ, Justice (dissenting).

The fundamental justification for amending a zoning ordinance is a change in conditions making the amendment reasonably necessary to protect the public interest. 8 E. McQuillin, *The Law of Municipal Corporations* § 25.67b, at 170 (3d rev. ed. 1976). Here, the trial court found that there was no significant change in the general location from the 1983–84 zoning ordinance to the 1985 downzoning. Under the facts of this case, I would conclude that the action of the city council was unreasonable and should be declared invalid.

From the time this property was annexed by the city in 1956 until 1985, the city has never zoned the property in a manner that would prevent the construction of multi-family residences. In 1962 the city commissioned a comprehensive zoning plan which affected the property but allowed multi-family dwellings. In the 1960s and 1970s the surrounding property was highly developed. In 1978 the property was rezoned and a new comprehensive plan adopted. Following extensive studies a new ordinance was adopted in 1983. Because of a defect it was readopted during the spring of 1985. While the property was downzoned during this period, multi-resident dwellings were still allowed.

At the insistence of a group of neighbors and over the recommendation of its planning and zoning commission, the city council, four months after its latest ordinance, rezoned the property to a type of district which disallows multi-dwelling construction. Neighbors also use the land for recreational purposes, and their representatives had previously attempted to have the same undeveloped property made into a city park.

Because of its location near the stadium and the hospital, this property is best used as multi-family dwellings. The object of zoning is to put property to its best use.

I am aware that zoning is not static and existing ordinances are subject to *reasonable* revision as the need appears and that ordinances may be amended any time circumstances and conditions warrant such action. *Jaffe v. City of Davenport*, 179 N.W.2d 554, 556 (Iowa 1970) (*citing Hanna v. Rathje*, 171 N.W.2d 876, 879 (Iowa 1969), and *Anderson v. City of Cedar Rapids*, 168 N.W.2d 739, 743 (Iowa 1969)).

In determining whether circumstances and conditions warrant amending ordinances, each case must be decided on its own facts. *Jaffe*, 179 N.W.2d at 556. When an ordinance is amended within a short period of time and there have been no changes in conditions or circumstances or no mistakes, injustices or other good reasons, stability and innate fairness require that the city proceed with utmost caution in making these additional alterations. If not, the very purpose of zoning will be destroyed. 8 E. McQuillin, § 25.68, at 171.

What was the reason for the ordinance amendment? After this action was filed, the city set forth the purported reasons for the rezoning. Traffic, pollution and congestion are not new to the area and were present both four months and two years earlier when the city studied this tract. This rezoning procedure was instituted by neighbors and not by the city or its planning staff. The obvious reason for the rezoning was neighborhood pressure. While I do not challenge or condemn the political process, I do not believe that the city council acted reasonably under the circumstances. It ignored the best use of the property and the interest of the general public in having housing convenient to Iowa City's largest employer. It bowed to a group who has enjoyed the use of this property and wishes to dictate its further use at the owners' expense. Without a careful restudy of the property in the area, the council had no legitimate reason to make changes. I would reverse the trial court.