Jay M. SHRIVER and Margie
E. Shriver, Appellants,

v.

CITY OF OKOBOJI, Appellee.

No. 96–523.

Supreme Court of Iowa.

July 23, 1997.

Jay M. Shriver of Pappajohn, Shriver, Eide & Nicholas, P.C., Mason City, for appellants.

Michael J. Chozen of Narey, Chozen & Saunders, Spirit Lake, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.

TERNUS, Justice.

This case forms the latest chapter in a fourteen-year disagreement between two neighbors. Nixon and Nancy Lauridsen want to build a garage, but the applicable 25-foot setback requirement has prevented them from doing so. The Lauridsens' neighbors, appellants Jay and Margie Shriver, fear a garage on the Lauridsen property would interfere with the Shrivers' view of West Okoboji Lake.

In previous litigation, the Lauridsens unsuccessfully sought a determination that their lot was not subject to the 25-foot setback requirement. *See Lauridsen v. City of Okoboji,* 554 N.W.2d 541 (Iowa 1996). The appellee, City of Okoboji, then amended the zoning ordinance to render the 25-foot setback line inapplicable to lots such as the Lauridsens' property. Because the Lauridsens may now construct a garage unrestricted by the former setback requirement, the Shrivers challenged the City's action in district court. The district court granted the City's motion for summary judgment. We conclude summary judgment was properly granted and so affirm.

I. *Background Facts and Proceedings.*

The Shrivers have owned property near West Okoboji Lake since 1947. In the early 1980s, the Lauridsens purchased a lakeshore lot due west of the Shrivers' property. The Lauridsens' property lies between the Shrivers' land and the lake. To the north of both properties is Funnel Street. Funnel Street intersects at the northwest corner of the Lauridsens' lot with Lake Shore Road, which runs along the shoreline of the lake. Both Funnel Street and Lake Shore Road were vacated by the City in 1934, leaving these rights-of-way for pedestrian use only.

In 1983, the Lauridsens decided to add an attached garage to the existing structure on their property. This addition would come within nine feet of the northern property line. The City's zoning ordinance, however, required a 25-foot setback for "corner lots." At the time, the ordinance defined a corner lot as "[a] lot located at the intersection of two or more streets and having the street right-of-way abut the front and one or more sides of the lot." Based on this definition, the city zoning administrator denied the Lauridsens' September 1983 application for a building permit, finding their lot was subject to the 25-foot setback requirement for corner lots. The Lauridsens then unsuccessfully sought a variance from the board of adjustment.

The matter rested there until 1994 when the Lauridsens became interested in selling their property. They believed their property would be more valuable if it was not subject to the setback restriction for corner lots. Having failed to obtain a variance in 1983, this time the Lauridsens sought a determination, first from the zoning administrator and later from the board of adjustment, that their lot was not a corner lot. Having no success in convincing the administrator and board of their position, the Lauridsens filed a petition for writ of certiorari in the district court. The district court quashed the writ, and we affirmed on appeal. *Lauridsen,* 554 N.W.2d at 544.

While the Lauridsens' appeal was pending, their lawyer, Jim Ladegaard, appeared before the Okoboji city council and asked the council to amend the definition of "corner lot." The council referred the matter to the planning and zoning board for study and recommendation. After consideration of the requested amendment and its ramifications, the zoning board decided to recommend amending the ordinance to redefine "corner lot" as

[a] Lot located at the intersection of two or more streets designed to accommodate licensed motor vehicular traffic and having the street right-of-way abut the front and one or more side lines of the lot. This definition shall not be so interpreted as to include any lot adjacent to the front and/or side of a public access or pedestrian walkway as a corner lot.

Under this amendment, the Lauridsens' property, as well as several other properties in the City, would no longer be corner lots, subject to the more restrictive setback line for such lots. When the issue came before the city council, attorneys for the Lauridsens and the Shrivers expressed their views on the merits of the proposed amendment. The council then approved an ordinance amending the definition of "corner lot" as recommended by the zoning board.

The Shrivers filed this action in district court (1) seeking a declaratory judgment that the ordinance was void, and (2) asking for damages based on the decreased market value of their property caused by an impaired view of the lake. The district court dismissed the Shrivers' claims on the City's motion for summary judgment. The Shrivers now appeal, raising several issues.

They first challenge the district court's determination that, as a matter of law, the City did not act illegally, arbitrarily or in excess of its authority. The Shrivers claim there are genuine issues of material fact concerning (1) whether the council illegally assumed the duties of the zoning administrator and board of adjustment, and (2) whether the council enacted the amendment to benefit a private citizen rather than for the health, safety, morals or general welfare of the community. The Shrivers' final claim on appeal is that the district court erred in determining the Shrivers had no protectible property interest that would support a claim for damages.[1]

---

1. The Shrivers also complain about (1) the procedure followed by the Lauridsens in bringing the proposed amendment before the city council, (2) the role of the Lauridsens' realtor, who was also a member of the board of adjustment, in advocating the Lauridsens' position to city officials, and (3) the City's alleged failure to determine

II. *Scope of Review.*

We follow familiar rules in the appeal of a summary judgment:

We review a summary judgment ruling for error. The district court correctly enters summary judgment when the record shows "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Iowa R. Civ. P. 237(c). Thus, on review, we examine the record before the district court to decide whether any material fact is in dispute, and if not, whether the district court correctly applied the law. In considering the record, we view the facts in the light most favorable to the party opposing the motion for summary judgment.

*General Car & Truck Leasing Sys., Inc. v. Lane & Waterman*, 557 N.W.2d 274, 276 (Iowa 1996) (citations omitted). A factual dispute precludes summary judgment only when the dispute is over facts that would affect the outcome of the suit. *Farm & City Ins. Co. v. Anderson*, 509 N.W.2d 487, 491 (Iowa 1993). "If the conflict in the record concerns only the legal consequences flowing from undisputed facts, entry of summary judgment is proper." *Thompson v. City of Des Moines*, 564 N.W.2d 839, 841 (Iowa 1997).

III. *Validity of Ordinance.*

A. *Principles of law governing challenge to city ordinance.* Zoning decisions are "an exercise of the police powers delegated by the State to municipalities." *Neuzil v. City of Iowa City*, 451 N.W.2d 159, 163 (Iowa 1990) (citing Iowa Code § 414.1 (1985)); *Montgomery v. Bremer County Bd. of Supervisors*, 299 N.W.2d 687, 692 (Iowa 1980). As part of its zoning power, a city may regulate "the percentage of [a] lot that may be occupied" and "the size of yards" for the purpose of "promoting the health, safety, morals, or the general welfare of the community." Iowa Code § 414.1 (1995). Moreover,

---

whether the ordinance complied with the City's comprehensive plan. The district court did not consider these claims and therefore, we are precluded from doing so on appeal. *See State v. Eames*, 565 N.W.2d 323, 326 (Iowa 1997); *State v. Manna*, 534 N.W.2d 642, 644 (Iowa 1995).

" 'a municipality may amend its zoning ordinances any time it deems circumstances and conditions warrant such action . . . if . . . it is not unreasonable or capricious. . . .' " *F.H. Uelner Precision Tools & Dies, Inc. v. City of Dubuque,* 190 N.W.2d 465, 469 (Iowa 1971) (quoting *Keller v. City of Council Bluffs,* 246 Iowa 202, 207–08, 66 N.W.2d 113, 116 (1954)); *accord Hanna v. Rathje,* 171 N.W.2d 876, 879 (Iowa 1969).

City zoning ordinances, including any amendments to them, enjoy a strong presumption of validity. *Neuzil,* 451 N.W.2d at 163, 165; *Business Ventures, Inc. v. City of Iowa City,* 234 N.W.2d 376, 381 (Iowa 1975). The burden is on the person challenging the ordinance to rebut the presumption and demonstrate the ordinance's invalidity. *Business Ventures,* 234 N.W.2d at 381; *Hanna,* 171 N.W.2d at 880. To carry this burden, the challenger must show the ordinance is unreasonable, arbitrary, capricious or discriminatory, with no reasonable relationship to the promotion of public health, safety, or welfare. *Anderson v. City of Cedar Rapids,* 168 N.W.2d 739, 742 (Iowa 1969); *Plaza Recreational Ctr. v. City of Sioux City,* 253 Iowa 246, 252–53, 111 N.W.2d 758, 762–63 (1961).

■ In considering the challenger's claim, the court will not substitute its own judgment for that of the city council by passing on the wisdom or propriety of the ordinance. *Neuzil,* 451 N.W.2d at 166; *Hanna,* 171 N.W.2d at 880. If the ordinance is facially valid and its "reasonableness" is "fairly debatable," the court will not interfere with the city's action. *Neuzil,* 451 N.W.2d at 163; *Stone v. City of Wilton,* 331 N.W.2d 398, 402 (Iowa 1983).

■ "An ordinance is valid if it has any real, substantial relation to the public health, comfort, safety, and welfare, including the maintenance of property values." *Neuzil,* 451 N.W.2d at 164; *accord F.H. Uelner Precision Tools,* 190 N.W.2d at 468. Our prime consideration is the general purpose of the ordinance, not the hardship it may impose in an individual case. *Neuzil,* 451 N.W.2d at 164; *see F.H. Uelner Precision Tools,* 190 N.W.2d at 468 (stating zoning for "the public good is a proper exercise of the police power even though it works some on-

erous consequences on landowners"). We do not focus on individual hardships because property owners in the area affected by a zoning ordinance, as well as adjacent landowners, have no vested right to the continuation of the current zoning. *See* Kenneth H. Young, *Anderson's American Law of Zoning* §§ 4.26, 4.28, at 319, 325–26 (4th ed.1996) [hereinafter *Anderson's American Law of Zoning* ]; 8 Eugene McQuillin, *The Law of Municipal Corporations* §§ 25.66, 25.138, at 226, 634 (3d ed. rev.vol.1991) [hereinafter McQuillin]. *See generally Anderson,* 168 N.W.2d at 743 ("zoning is not static, any existing restrictions being always subject to reasonable revisions with changing community conditions and needs as they appear"). Thus, we will not declare an ordinance invalid simply because it adversely affects a particular property owner. *Neuzil,* 451 N.W.2d at 164; *Plaza Recreational Ctr.,* 253 Iowa at 254–55, 111 N.W.2d at 763–64; McQuillin § 25.44, at 141 ("Mere diminution of market value or interference with the property owner's personal plans and desires relative to his or her property is insufficient to invalidate a zoning ordinance. . . .").

■ The reasonableness of an ordinance is "fairly debatable" where the record shows a basis for a fair difference of opinion. *Neuzil,* 451 N.W.2d at 163–64. If "there is room for two opinions," the challenged ordinance is valid. *Anderson's American Law of Zoning* § 3.20, at 133.

■ **B.** *Did the city council illegally assume the duties of the zoning administrator and board of adjustment?* The first basis upon which the Shrivers challenge the validity of the zoning ordinance focuses on the power of the city council, rather than on the substance of the ordinance. The Shrivers argue the city council enacted the new definition of "corner lot" as a pretext, that the council was in reality granting the Lauridsens a variance. They point out the Okoboji zoning ordinance places the power to grant a variance with the board of adjustment, not the city council.

The Shrivers' argument overlooks the fact the ordinance was of general applicability. It was not directed solely at the property of

the Lauridsens, but applied to any lot abutting a pedestrian right-of-way. The record shows there are several properties affected by the ordinance. In contrast, a variance is granted to an individual property owner. McQuillin § 25.160, at 721. A variance does not amend the zoning ordinance, *id.,* and does not automatically apply to similarly-situated property.

That the result of the ordinance was the same for the Lauridsens as a variance does not mean the City is powerless to enact the ordinance. Any other conclusion would mean the city council would be precluded from changing any restrictions contained in its zoning ordinance because the same result could be accomplished as to a particular property by approval of a variance. We conclude the Okoboji city council clearly exercised a power granted to it, namely, the power to amend the zoning ordinance. *Compare Graziano v. Board of Adjustment,* 323 N.W.2d 233, 237 (Iowa 1982) ("[T]he power to change the zoning restrictions belongs to the zoning commission and the city council ....") *with Greenawalt v. Zoning Bd. of Adjustment,* 345 N.W.2d 537, 544 (Iowa 1984) ("The board [of adjustment], therefore, merely has authority to determine whether exceptions to an ordinance are to be allowed. It cannot amend or change an ordinance....").

■■ *C. Is the ordinance facially valid and is its reasonableness fairly debatable?* The Shrivers argue the ordinance was intended to benefit one person and was not for the health, safety, morals, or general welfare of the community. They point out the City conducted no research, study or investigation on how the amended definition of "corner lot" would affect the community.

The undisputed facts show the Lauridsens' attorney, Jim Ladegaard, appeared before the Okoboji planning and zoning board to request an amendment to the definition of "corner lot." He pointed out the underlying rationale for the 25–foot setback requirement was to provide unobstructed vision to motorists at the intersection of the abutting streets. He argued this rationale did not apply where the streets had been abandoned by the city and were no longer open to vehicular traffic. Ladegaard suggested the

ordinance be amended to remove from the definition of "corner lot" property abutting streets only available for pedestrian use. The zoning board discussed Ladegaard's request and consulted the official zoning map of the city to identify properties that would be affected by the amendment. It then unanimously agreed to recommend the amendment to the city council.

At its meeting, the city council received the board's recommendation and heard arguments for and against the amendment from the attorneys representing the Lauridsens and the Shrivers. The city council had before it a definition of "corner lot" that in its present form prevented the Lauridsens and similarly-situated property owners from fully using their land because corner lots were subject to a 25–foot setback restriction on buildings. The proposed amendment would narrow the type of lots classified as corner lots, resulting in the categorization of the Lauridsens' and similarly-situated property as interior lots, subject to much less restrictive setback lines. The amendment would, however, adversely impact the value of the Shrivers' property because a structure built on the Lauridsens' lot within the limits of the new setback requirement would interfere with the Shrivers' view of West Okoboji Lake. Underlying these competing interests was the absence of any reason to continue the setback restriction on property bounded by abandoned streets. The council considered the situation before it and then approved the amendment, deeming "it to be in the best interest of the public." These undisputed facts demonstrate as a matter of law the facial validity of the ordinance and that its reasonableness is fairly debatable.

Setback restrictions are a valid exercise of police power, and therefore, the proper subject of a municipal zoning ordinance. *Boardman v. Davis,* 231 Iowa 1227, 1230–31, 3 N.W.2d 608, 610–11 (1942); *Anderson's American Law of Zoning* § 7.19, at 770–71. Thus, the ordinance is facially valid.

■■ Its reasonableness is also fairly debatable. Although "[a]n amendment to accommodate or favor a certain property owner, or a limited group of owners, when there

has been no change of conditions since the enactment of a zoning ordinance, ... is invalid," it is for the city to decide whether a zoning ordinance, by virtue of changing circumstances, has come to operate as an arbitrary and unreasonable restraint on property within the city. McQuillin § 25.69, at 241; *see Business Ventures,* 234 N.W.2d at 382. *See generally Hermann v. City of Des Moines,* 250 Iowa 1281, 1285, 97 N.W.2d 893, 895 (1959) (stating municipality, when imposing zoning restrictions, should not favor one property owner over another "in the absence of a good reason therefor"); McQuillin § 25.138, at 631 ("Building or setback lines, to be valid, must be prescribed with regard to their necessity for the public health, safety and welfare."). Moreover, the balancing of competing interests affected by zoning is precisely the type of decision best left to local governmental bodies. *See Neuzil,* 451 N.W.2d at 166 (stating it is entirely within a municipality's discretion to determine whether the public's interest requires a change in zoning); *Stone,* 331 N.W.2d at 403 (holding where city council was faced with a number of competing concerns in regard to the proper zoning, "courts refrain from reviewing the merits of [the council's] decisions if at least a debatable question exists as to the reasonableness of [its] action"); McQuillin § 25.55, at 177 (noting whether conditions or the public interest demand zoning action is entirely within the discretion of the municipality). Thus, the determination of whether the public welfare is promoted in the City of Okoboji by the removal of restrictions on the use of property where the rationale for such restrictions no longer exists should be left to the sound discretion of the municipality. Because the undisputed facts establish there is "room for two opinions" on whether lots such as the Lauridsens' should be subject to a 25–foot setback line, the reasonableness of the ordinance is fairly debatable. *See Anderson's American Law of Zoning* § 3.20, at 133 (stating where there is room for two opinions on merits of ordinance, reasonableness of ordinance is fairly debatable). Therefore, the district court properly refused to declare the city's ordinance invalid.

We also decline the Shrivers' invitation to measure the reasonableness of an ordinance solely by the amount of investigation that preceded its adoption. The study required by a municipality to make an informed decision will vary under the circumstances of each case. Moreover, a municipality's efforts to educate itself through research, investigation, and study are important, not for their own sake, but only as such efforts relate to the reasonableness of its ultimate decision. *See Hanna,* 171 N.W.2d at 881 (noting no authority supporting proposition that ordinance is unreasonable simply "because more study could have been made of the effects of the ordinance"; rather, court considered council's "discussion, study and consideration of the proposed change in zoning" on question of reasonableness of council's actions).

Here, the merits of amending the definition of "corner lot" are fairly debatable. Although the Shrivers complain the City did not adequately study this issue, they have not suggested what any additional research by the City would have revealed and how the probable results of such research affect the reasonableness of the City's decision to amend the zoning ordinance. Consequently, the City's alleged lack of investigation does not create an issue of material fact precluding entry of summary judgment. *See Marks v. Estate of Hartgerink,* 528 N.W.2d 539, 544 (Iowa 1995) (stating party resisting summary judgment cannot rely on mere allegations, but must set forth specific facts that generate a factual dispute).

### IV. *Damage Claims.*

The Shrivers seek damages from the City claiming in two counts that the ordinance approved by the City resulted in a discriminatory taking of their property without due process of law. *See* U.S. Const. amends. V, XIV. In the final count of their petition, they claim they were deprived of "a right protected by the United States Constitution." In all three counts, they seek to recover the amount by which their property has decreased in value because future structures now permitted on the Lauridsens' lot will interfere with the Shrivers' view of West Okoboji Lake.

**A.** *Taking.* "Land-use regulation does not effect a taking requiring compensation if it substantially advances a legitimate state interest." *Hunziker v. State,* 519 N.W.2d 367, 370 (Iowa 1994); *accord Stone,* 331 N.W.2d at 404 (holding 42% reduction in value of property did not constitute a taking "in light of the council's reasonable belief that the public welfare required a change in zoning"). We have already determined the regulation of setback lines was a proper and reasonable exercise of police power, advancing the general welfare of the public.

Notwithstanding that a regulation meets the "legitimate state interest" test, the State may nevertheless be required to pay compensation "when the regulation (1) involves a permanent physical invasion of the property, or (2) denies the owner all economically beneficial or productive use of the land." *Hunziker,* 519 N.W.2d at 370. There are no facts in the record showing a physical invasion of the Shrivers' property; under the amended zoning ordinance, the Lauridsens' garage must be entirely within the boundaries of their lot. Additionally, the record does not demonstrate the Shrivers will be deprived of the productive use of their land; they can continue to use their property as a residence despite their diminished view of the lake. Thus, no compensable taking has occurred as a matter of law.

**B.** *Property right to view.* We also conclude, as did the district court, that the Shrivers have no property right to a view across the Lauridsens' property that would support a claim for damages. In *Mohr v. Midas Realty Corp.,* 431 N.W.2d 380, 383 (Iowa 1988), we refused to recognize a property owner's right to an unobstructed view across private property. The plaintiff in *Mohr* sought damages from a neighboring landowner who had constructed a building on its property that interfered with the view of and from the plaintiff's land. *Mohr,* 431 N.W.2d at 381. The building erected on the neighboring property complied with all zoning restrictions and setback lines. *Id.* We affirmed the district court's summary judgment dismissing the plaintiff's nuisance claim, "find[ing] no compelling reason to rec-

ognize an enforceable right of view over private property." *Id.* at 383.

We think the undisputed facts of this case place it within the rule stated in the *Mohr* case. The Shrivers' obstructed view arises from the anticipated construction of a private garage on private property. Their asserted right to view the lake across the Lauridsens' property is not recognized under Iowa law and consequently its loss is not compensable. *Cf. 8,960 Square Feet, More or Less v. State,* 806 P.2d 843, 848 (Alaska 1991) (holding landowner entitled to compensation from state only "where diminished visibility results from changes on the property taken from the landowner, but not where it occurs due to changes on the property of another").

In summary, the Shrivers are not entitled to compensation from the City as a matter of law because no taking has occurred and they have no property right that can provide the basis for the recovery of damages from the City.

## V. *Conclusion.*

The district court properly granted summary judgment to the City: (1) the city council did not assume the duties of the zoning administrator or the board of adjustment by amending the definition of "corner lot"; (2) the regulation of setback requirements is a valid exercise of the City's police power to act for the general welfare of the public, and so the ordinance is facially valid; (3) the reasonableness of the City's amended definition of "corner lot" is fairly debatable; (4) the ordinance did not constitute a regulatory taking of the Shrivers' property; and (5) the Shrivers have no protectible property interest in their view across the Lauridsens' land, such as would support a claim for damages against the City. No dispute of material fact exists that would affect the resolution of these issues or the outcome of this case. Therefore, we affirm the judgment of the district court.

**AFFIRMED.**