QUALITY REFRIGERATED SERVICES, INC., Appellant,

v.

CITY OF SPENCER, and the City Council for the City of Spencer, Namely Steve Waller, Ed Krebs, Reynold Peterson, Mary Huston, Jim Roling, Ron Sears, and David Scott, Appellees.

No. 96–1857.

Supreme Court of Iowa.

Oct. 21, 1998.

Rehearing Denied Dec. 8, 1998.

Michael W. Ellwanger of Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, Sioux City, and R. Jeffrey

Lewis and S.P. DeVolder of Lewis, Webster, Johnson, Van Winkle & DeVolder, Des Moines, for appellant.

Marvin F. Heidman and John D. Ackerman of Heidman, Redmond, Fredregill, Patterson, Plaza & Dykstra, L.L.P., Sioux City, for appellees.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and TERNUS, JJ.

TERNUS, Justice.

The appellant, Quality Refrigerated Services, Inc. (QRS), sought relief from zoning restrictions on its property located in the City of Spencer. We agree with the district court that the City's decision to change the zoning classification of the QRS site and the City's subsequent refusal to rezone the property were valid. Therefore, we affirm.

## I. *Background Facts and Proceedings.*

In 1989, QRS acquired property from the appellee, City of Spencer. An abandoned meat packing plant was located on this property. For several years prior to QRS's acquisition of the site, the City had attempted to locate a company that would remodel the facility and reopen a business that would provide employment for the City's residents. QRS intended to renovate the building to house a cold storage warehouse and then, after additional construction and remodeling, lease a portion of the facility for on-site meat processing. QRS's plans for the building were well-known to city officials and encouraged by them.

By February 1990, the first phase of renovation was completed and QRS opened its cold storage warehouse. QRS had difficulty finding a meat processing tenant, but proceeded with the second phase of remodeling to enhance the chances of obtaining such a tenant. Meanwhile, in April 1991, the city council adopted comprehensive amendments to its zoning ordinance. These amendments changed the zoning district for the area in which the QRS site was located from "E Heavy Industrial" to "C–2 Highway Commercial." Meat processing was permitted in the old classification but not in the new one.

In early 1995, QRS located a possible tenant for the meat processing portion of its facility. To obtain this tenant, QRS needed to expand the size of its plant; it applied for a building permit to do so. The City's building and zoning officer denied the application on the basis that the proposed use—meat processing—was not permitted in a C–2 Highway Commercial zoning classification. The denial of its application was the first knowledge QRS had that its property had been rezoned.

QRS then sought to have its property rezoned D Light Industrial, a classification allowing meat processing. Although the planning and zoning commission approved the rezoning, the city council voted against the recommendation after hearing the concerns of citizens at the council's public meeting.

QRS filed this action against the City and the city council members seeking a writ of certiorari and declaratory relief. In its petition for a writ of certiorari, QRS claimed the city council's denial of QRS's request for rezoning was "illegal, arbitrary, capricious and unreasonable." This claim was denied on a summary judgment ruling on the basis that there was no genuine issue of material fact as to the legitimate reasons upon which the council based its decision.

QRS's request for declaratory relief challenged the 1991 rezoning of its property as well as the City's denial of its request for rezoning. QRS also sought a declaratory ruling that the use of its property for meat processing qualified as a nonconforming use. In its summary judgment ruling, the district court rejected QRS's nonconforming-use claim. A trial to the court of the remaining claims resulted in a judgment adverse to QRS. The bases for the trial court's ruling are apparent in the issues QRS raises in this appeal: (1) the trial court erroneously concluded that QRS had failed to exhaust its administrative remedies; (2) the trial court erred in ruling QRS was not entitled to personal notice of the zoning change; and (3) the trial court erroneously determined that QRS did not have a vested right to the original zoning designation. In addition, QRS challenges the trial court's admission of

expert legal testimony as to the administrative remedies available to QRS, and the district court's summary dismissal of its petition for writ of certiorari. QRS has abandoned on appeal any claim that meat processing qualifies as a nonconforming use.

## II. Scope of Review Applicable to Ruling on Request For Declaratory Judgment.

■■■ The declaratory judgment action was tried in equity and, therefore, our review is de novo. See Iowa R.App. P. 4. Although we are not bound by the trial court's factual findings, we give them weight. See Hyler v. Garner, 548 N.W.2d 864, 870 (Iowa 1996).

■■■ QRS contends the trial court's factual findings are not entitled to any weight here because the trial court did not exercise independent judgment in making these findings. This contention is based on the court's nearly verbatim adoption of the City's proposed findings and conclusions of law. We have considered similar requests before and have declined to adopt a different standard of review under such circumstances. See Care Initiatives v. Board of Review, 500 N.W.2d 14, 16 (Iowa 1993). Although we do not encourage the verbatim adoption of one party's proposed findings and conclusions, the trial court may do so without jeopardizing its independent judgment.

## III. Validity of 1991 Zoning Ordinance.

We begin our discussion with QRS's assertion that the 1991 amendments to the zoning ordinance were ineffective to change the zoning classification applicable to its property. This assertion rests on two legal arguments: (1) QRS was entitled to personal notice of the proposed change in the zoning classification governing its property; and (2) QRS had a vested right to the original zoning designation.

*A. Requirement of personal notice.* QRS contends that the United States Constitution and the City's zoning ordinance required the City to give it personal notice of the changes affecting its property resulting from the proposed amendments to the zoning ordinance. We disagree.

■■■ 1. *Constitutional claim.* The Due Process Clause requires that any deprivation of property "be preceded by notice and opportunity for hearing *appropriate to the nature of the case.*" *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865, 873 (1950) (emphasis added); see U.S. Const. amend. XIV. In determining the notice required in a particular case, the court is required to balance the "interest of the State" and "the individual interest sought to be protected by the Fourteenth Amendment." *Tulsa Professional Collection Servs., Inc. v. Pope,* 485 U.S. 478, 484, 108 S.Ct. 1340, 1344, 99 L.Ed.2d 565, 574–75 (1988). "The focus is on the reasonableness of the balance, and ... whether a particular method of notice is reasonable depends on the particular circumstances." *Id.* at 484, 108 S.Ct. at 1344, 99 L.Ed.2d at 575. Thus, although personal service of notice is the "classic form of notice," it is not always required. *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873. Moreover, it is appropriate to consider "the practical difficulties and costs" attendant on personal service of notice in determining whether such notice is constitutionally required. *Id.* at 317, 70 S.Ct. at 659, 94 L.Ed. at 875.

Here, QRS's interest is its right to appear before the city council and express its views on the proposed comprehensive amendments to the zoning ordinance and the effect of the amendments on QRS's use of its property, an important interest as the facts of this case illustrate. On the other hand, the proposed amendments were comprehensive and affected the entire community. The task of providing personal notice to every property owner in the city is enormous. Furthermore, the city-wide scope of the proposed amendments makes it more likely that notice by publication will result in actual notice. The notice published by the City warned that the comprehensive amendments "will affect *all* property in the City and will change or revise, in many instances, the permitted uses of property." (Emphasis added.) More specifically, the notice stated that the comprehensive amendments would also result in a change of zoning classification of some properties. No-

tice of such widespread changes in the City's existing zoning districts would surely generate some discussion among the general public as well as further publicity through the news media. In fact, the local media covered both the public meeting of the planning and zoning commission as well as the subsequent meeting of the city council held to consider the amendments.

■ We think notice by publication under the circumstances of this case is reasonably certain to inform those affected. In balancing the interests of the City and the property owners, we conclude notice by publication is sufficient under the facts of this case to inform property owners such as QRS that their property may be affected by the proposed zoning amendments so as to satisfy the requirements of due process. *See Fisette v. DiPietro*, 28 Conn.App. 379, 611 A.2d 417, 420 (1992) (approving constructive notice for a comprehensive zoning change); *Threatt v. Fulton County*, 266 Ga. 466, 467 S.E.2d 546, 549 (1996) (holding personal notice of comprehensive land and water use plans not required); *Fortier v. City of Spearfish*, 433 N.W.2d 228, 229–30 (S.D.1988) (holding notice by publication of flood control ordinance affecting an entire community was constitutionally adequate). *See generally* 7 Patrick J. Rohan, *Zoning and Land Use Controls* § 50.03[1][c], at 50–35 to 50–42 (1991).

■ 2. *Notice required by ordinance.* QRS also relies on the "public notice procedure" contained in the City's zoning ordinance as support for its contention that personal notice is required. As stated in the ordinance, these public notice procedures establish the "minimum requirements for notice to be given with respect to procedural actions and public hearings required by the [zoning ordinance]." None of the procedures requiring personal notice, however, apply to the facts of the case before us. Rather, the personal-notice provisions pertain to special exceptions, variances, administrative appeals, and applications for rezoning. The adoption of comprehensive zoning amendments does not fall within the listed categories requiring personal notice. Nonetheless, QRS points out that, in some instances, the City's action on requests falling within these categories

can result in a rezoning of property located in the City. While that may be so, the rezoning at issue here was accomplished by city-wide rezoning and a complete recodification of the City's zoning ordinance initiated by the City itself, rather than by the City's consideration of a particular application for rezoning filed by a property owner. Consequently, QRS's contention that the City's zoning ordinance mandated personal service of notice on QRS fails.

■ B. *Vested rights.* QRS also argues that the 1991 zoning ordinance reclassifying its property cannot be applied to it because QRS had a vested right in the original zoning classification. We note initially that no property owner has a vested right in the continuation of a particular zoning classification. *See Neuzil v. City of Iowa City*, 451 N.W.2d 159, 164 (Iowa 1990). The only vested right that a property owner may acquire is the right to complete the development of his property in accordance with his plans as of the effective date of the new ordinance. *See Board of Supervisors v. Paaske*, 250 Iowa 1293, 1298–99, 98 N.W.2d 827, 831 (1959); *Keller v. City of Council Bluffs*, 246 Iowa 202, 213, 66 N.W.2d 113, 119 (1954). The planned development, when completed, becomes a nonconforming use under the zoning ordinance. *See* 83 Am.Jur.2d *Zoning and Planning* § 624, at 520 (1992).

■ To determine whether a property owner has acquired a vested right, we engage in a two-part analysis: (1) did the property owner make substantial expenditures toward the use in question prior to the zoning change; and (2) were the expenditures made by the property owner lawful. *See City of Lamoni v. Livingston*, 392 N.W.2d 506, 510–11 (Iowa 1986); *Paaske*, 250 Iowa at 1298–1300, 98 N.W.2d at 830–31. This doctrine is recognized in the City's zoning ordinance, which provides that the new ordinance does not require "a change in the plans, construction or designated use of any building on which actual construction was lawfully begun prior to the effective date" of the ordinance.

On appeal, the City does not contest that QRS made substantial expenditures on its building to accommodate a meat processing tenant prior to enactment of the comprehensive amendments to the zoning ordinance.

(The record shows QRS spent $650,000 on these improvements prior to April 1991.) The City does argue, however, that QRS was required by the city ordinance to obtain a building permit authorizing this construction and that QRS's failure to do so makes its expenditures illegal.

 One of the City's ordinances prohibits a person from enlarging, altering, remodeling, or converting any building at a cost of more than $500 without first receiving a permit. QRS excuses its failure to obtain a permit by pointing to the City's knowledge that it planned to renovate the facility to house a meat processor and the City's encouragement of QRS's efforts to obtain such a tenant.[1] QRS does not cite to, nor have we found, any case holding that a property owner's failure to obtain a required building permit is excused by such conduct on the part of the municipality. In fact, this court "has long held that acts by individual members of a public body, even when concurred in by the majority, cannot bind the municipality unless officially sanctioned in accordance with the statute." *City of McGregor v. Janett,* 546 N.W.2d 616, 620 (Iowa 1996); *accord Alfredo v. Iowa Racing & Gaming Comm'n,* 555 N.W.2d 827, 834 (Iowa 1996) (holding knowledge and approval of plaintiff's actions by commission staff cannot substitute for formal approval of commission, where such approval was required by statute and regulations).

We conclude QRS's development of its property for meat processing purposes, although done in good faith, violated the city ordinance and was, therefore, illegal. This illegality precludes QRS's acquisition of a vested right to continue the development after adoption of the new zoning classification.

IV. *Denial of Application For Rezoning.*

A. *Issue presented for review.* Having concluded the 1991 reclassification of QRS's property from "heavy industrial" to "highway commercial" was valid, we now examine whether the City's later refusal to rezone the QRS site was illegal. This challenge to the City's rezoning decision was made by QRS in

its petition for writ of certiorari and in its request for declaratory judgment. The claimed illegality rests on QRS's assertion that its rezoning application was denied for reasons unrelated to the health, safety and welfare of the City's residents. QRS contends the council was influenced by the fear expressed at the public hearing that a meat processing plant would bring racial and ethnic minorities into the community.

The district court dismissed QRS's petition for writ of certiorari, granting summary judgment to the City on this issue. Nevertheless, it considered the issue again in ruling on QRS's request for declaratory relief. Although, after trial, the court held QRS had not exhausted its administrative remedies and, accordingly, could not pursue a remedy in the district court, the trial court also ruled that the City's refusal to rezone QRS's property was not illegal, unreasonable, arbitrary, or capricious.

Upon our de novo review, we agree with the trial court's finding that QRS failed to prove the City's decision was invalid. Our holding on the merits of this issue makes it unnecessary for us to consider whether the district court erred in granting summary judgment to the City on the same issue when ruling on QRS's petition for certiorari. It also makes unnecessary our consideration of the exhaustion-of-administrative-remedies issue and the admissibility of expert testimony directed to this issue. Even if the district court erred as to these matters, QRS's claim ultimately fails on the merits for the reasons that follow.

 B. *Principles of review.* Zoning decisions are entitled to a strong presumption of validity. *See Shriver v. City of Okoboji,* 567 N.W.2d 397, 401 (Iowa 1997). One challenging such a decision must show that it is "unreasonable, arbitrary, capricious or discriminatory, with no reasonable relationship to the promotion of public health, safety, or welfare." *Id.* The court will not substitute its judgment for that of the zoning authority. *See id.* Thus, if the reasonableness of the zoning decision is fairly debatable

---

1. We note QRS has not raised on appeal its claim of estoppel against the City, an argument rejected by the trial court.

and the decision is facially valid, the court will not interfere with the city's action. *See id.; Call Bond & Mortgage Co. v. City of Sioux City*, 219 Iowa 572, 578, 259 N.W. 33, 35 (1935) (holding building inspector did not act illegally or arbitrarily in revoking permit where there was "sufficient ground for debate"). A zoning decision is fairly debatable if the evidence provides a basis for a fair difference of opinion. *See Neuzil*, 451 N.W.2d at 164. It is facially valid "if it has any real, substantial relation to the public health, comfort, safety, and welfare, including the maintenance of property values." *Id.* Moreover, "[e]ven though a challenged zoning [decision] adversely affects a property interest or prohibits the most beneficial use of the property, a court should not, for that reason alone, strike it down." *Id.*

■ C. *Discussion.* QRS claims the city council members voted against its rezoning request for reasons unrelated to the merits of the request. It asserts the council members were swayed by prejudice against the type of workers it was anticipated a meat processing facility would hire. Such sentiments were expressed by citizens speaking at the council's public meeting held to consider QRS's rezoning request. On the other hand, many legitimate concerns about the proposed facility were also voiced at the public hearing.

The council members testified to several valid reasons for voting against the rezoning application: (1) adverse effects on value of neighboring properties; (2) potential for odor problem from meat processing; (3) increased traffic resulting from meat processing plant; (4) fear that rezoning would be illegal spot zoning; and (5) increased demands on the City's sewage disposal plant. These reasons support the facial validity of the City's decision because they relate to the public comfort and welfare.

There was no evidence, other than supposition, that any council member based his or her decision on an impermissible reason, as suggested by QRS. Moreover, there was factual support for the stated reasons in the record. Clearly the wisdom of granting QRS's rezoning request was fairly debatable.

On our de novo review, we agree with the trial court that QRS failed to show that the city council acted in an illegal, unreasonable, arbitrary or capricious manner. *See Riley v. Boxa*, 542 N.W.2d 519, 523 (Iowa 1996) (holding denial of building permit was not arbitrary, capricious, or unreasonable where decision was debatable). Therefore, the City's rejection of QRS's request for rezoning its property is valid and will not be overturned by this court.

V. *Summary.*

QRS received proper notice of the City's intent to adopt comprehensive amendments to the City's zoning ordinance changing the zoning districts, including the district applicable to QRS's property. QRS had no vested right to continue the renovation of its property to house a meat processing tenant because the construction expenditures it made prior to the adoption of the new zoning districts were unlawful based on QRS's failure to obtain a building permit for the construction. In view of the foregoing, the 1991 rezoning of the QRS site was valid.

The City's decision to deny QRS's application for rezoning was not illegal, unreasonable, arbitrary or capricious. Therefore, QRS is not entitled to any relief from the City's decision.

**AFFIRMED.**