Dennis Eugene **FISHER**, Appellant,

v.

**STATE of Iowa,** Appellee.

No. 68193.

Supreme Court of Iowa.

Aug. 17, 1983.

Rehearing Denied Sept. 16, 1983.

---

Francis C. Hoyt, Jr., Appellate Defender, and Patrick R. Grady, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Marcia Mason, Asst. Atty. Gen., and Robert Glaser, County Atty., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McGIVERIN, LARSON and WOLLE, JJ.

McGIVERIN, Justice.

This is an appeal from denial of postconviction relief. Iowa Code ch. 663A (1983). Applicant Dennis E. Fisher claims that his due process rights were violated because the prosecutor failed to correct the alleged inaccuracies in the testimony of the State's primary witness concerning the plea bargain she had made. We affirm the postconviction court's ruling that Fisher's due process rights had not been violated.

Fisher was convicted in October 1975 of the murder of Howard Miller, but the conviction was overturned by this court in *State v. Fisher,* 246 N.W.2d 918 (Iowa 1976). Petitioner's second trial and conviction of first-degree murder, Iowa Code § 690.2 (1975), was affirmed by us in *State v. Fisher,* 279 N.W.2d 265 (Iowa 1979).

Fisher was represented by attorney Victor V. Sprengelmeyer at this second trial and on appeal therefrom. In his post conviction petition, Fisher, through new counsel, James U. Mellick, raised several allegations of ineffective assistance of prior counsel. The postconviction court found that Fisher's trial counsel had properly represented him and further ruled that his due process claims were without merit. On appeal, Fisher is represented by the appellate defender's office. Now, he contends that attorney Mellick provided ineffective assistance of counsel in failing to allege that, on direct appeal from the second trial, attorney Sprengelmeyer's failure to raise the due process claim at issue here was ineffective assistance of counsel. Therefore, the ruling of the postconviction court did not address the issue of sufficient reason for not raising the due process claim on direct appeal from the second conviction. Iowa Code § 663A.8 (1983) ("Any ground finally adjudicated or not raised, or knowingly, voluntarily and intelligently waived ... in any ... proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds a ground for relief asserted for which sufficient reason was not asserted or was inadequately raised...."). Rather than decide on this record whether Fisher established sufficient reason, we elect in this case to assume, without deciding, that he did so. *See Armento v. Baughman,* 290 N.W.2d 11, 13 (Iowa 1980). Thus we reach the merits of Fisher's claim.

Fisher's claim asserts a constitutional violation. We, therefore, make an independent evaluation of the totality of the circumstances which is the equivalent of a de novo review. *Sims v. State,* 295 N.W.2d 420, 422 (Iowa 1980).

The essence of Fisher's claim is that the jury was misled concerning the plea bargain struck between the State and its primary witness, Myra (Miller) Wolfe. Fisher raises two specific objections, both based on *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (due process requires that the prosecutor has an affirmative duty to correct the misstatement of a witness concerning arrangements made in exchange

for testimony). *See also State v. King,* 256 N.W.2d 1, 15–16 (Iowa 1977) and cases cited therein. First, Fisher contends that Wolfe made misleading statements concerning her agreement with the State. Second, he says that the prosecutor not only failed to correct these misstatements but he compounded them in his closing arguments to the jury.

Wolfe, the widow of the victim Howard Miller, did not report her husband's death to authorities; rather she reported him as missing. About three months after his death, she and Fisher left the state of Iowa and were later arrested in Missouri while trying to cash a check made out to Howard and Myra Miller. Both were returned to Iowa and indicted on open charges of murder.

In a plea bargain, the State agreed to drop the murder charge against Wolfe, provided that she testify at Fisher's trial and plead guilty to a conspiracy charge. Iowa Code § 719.1 (1975). At both trials Wolfe testified that Fisher had fatally shot her husband. After the first trial, she was convicted upon a plea of guilty of obstructing justice. By the time of the second trial, she had served her sentence.

At Fisher's second trial, cross examination of Wolfe by Fisher's attorney, who was fully apprised of her plea bargain agreement, elicited the following:

Q. Well, Myra, you made a deal ultimately didn't you, with Mr. Carr [the county attorney]?

A. I don't believe that was until after going to court.

Q. Part of the deal was that you would testify in any proceeding against Dennis Fisher, and you would get your murder charge dropped; isn't that a fact?

A. I'm not quite sure how to answer that. I believe so.

The matter was not pursued further and the letter from the county attorney to Wolfe's attorney detailing the specifics of the plea bargain agreement was not introduced into evidence at the criminal trial. The agreement set forth in the letter was as follows:

In return for the full testimony of Myra Miller at any time during any proceeding involving the case of State v. Dennis Fisher, the State is willing to dismiss the current homicide indictment against Mrs. Miller and further to refrain from bringing any and all other charges against her arising out of or related to the incident of January 18, 1975, except the charge of conspiracy. The charge of conspiracy will be brought and it is understood that in return for the above Mrs. Miller will plead guilty to same and that the Court will impose such sentence as it deems appropriate without any plea bargain or understanding with respect to the sentence itself. Conspiracy charge which will be brought is that contemplated by Section 719.1 of the 1975 Code of Iowa and will be a State charge.

This charge will be formally filed after the outcome of the matter of State vs. Fisher in the District Court and shall not be made public until such matter is completed at the District Court level. It should further be understood that in the event of any reversal in the Iowa Supreme Court that the obligation of Myra Miller to testify at any future trial would also be incumbent upon her as a result of this understanding.

It should be further understood that her testimony will be substantially similar to that information which was given to the Delaware County Attorney and the Delaware County Sheriff in the Delaware County Attorney's office and in the Delaware County Sheriff's office on Monday, September 8, 1975 and also that which is contained in her deposition which was taken in the Delaware County Courthouse on Thursday, September 11, 1975. We would anticipate no surprises which would be adverse to the State's case in the prosecution of State v. Fisher.

\* \* \* \* \* \*

The prosecutor discussed the plea agreement in his closing argument to the jury at the second trial in the following manner:

Now, she did some wrong things in not telling what happened when the sheriff was inquiring before. She obstructed justice, and that's what she was charged with, and there [were] agreements made with the county attorney and the attorney that she had at that time, Jim Reynolds, concerning that conviction. The State, and it shows in the Record, did not dismiss the charge against Myra Miller based upon the belief that she was somehow or other an accomplice to this murder, and that Record is in the evidence and it shows the basis for the dismissal. This is found in Defendant's Exhibit F. There is an application for dismissal on behalf of the county attorney of Delaware County, Iowa, and Delaware County is the place where the Miller farm was.

In this he moves in the furtherance of justice for the reason that there is no evidence on which to proceed in this case, for dismissal. As you can read here in this when you have an opportunity to examine the evidence. And on that basis a judge grants this, and the judge says that the case is dismissed in the furtherance of justice and for the reason that there is no evidence on which to proceed in said case, and that was the original murder indictment.

Now, at a later time, as you well know, she was convicted for withholding of evidence, and that is obstruction of justice, and she did serve time on that. She did serve a penalty. All of this the State readily admits.

Fisher claims that Myra's testimony, coupled with the prosecution's closing arguments, misinformed the jury, and left it with the impression that the murder charge against Wolfe was dismissed solely for lack of evidence. We, however, agree with the finding of the postconviction court that "[t]he record indicates that ... information [about the plea bargain agreement] was presented to the jury." We further conclude that the jury was not misled.

The prosecution's reference to the lack of evidence to support a murder charge against Wolfe was based on the application for dismissal, submitted into evidence at the criminal trial by Fisher, which requested that the murder charge be "dismissed ... for the reason that there is no evidence on which to proceed in this case. The defendant has further entered a plea of guilty to the charge of conspiracy ... and has testified on behalf of the State in the case of *State v. Fisher....*"

Additionally, in his closing arguments, Fisher's attorney dwelt at some length on Wolfe's reasons for testifying against Fisher:

MR. SPRENGELMEYER: Let's get to the part where she changes her story. We have heard evidence here, and ample testimony, that there are at least three versions that Myra has come up with here in this whole matter, the one she was telling everyone those three months after whatever happened January 18th, "Howard disappeared. We had a fight and he got mad and left." That's one. Two, what she told the police in Missouri, and three, the truth, she says, "the one I am telling you here." When did that come about? When did number three arise? Ladies and Gentlemen, that arose after she is charged with murder and after she is making a deal through her dad with his attorney, Mr. Carr.

MR. WOODWARD [prosecutor]: Objection, that's not the way the Record is, your Honor.

MR. SPRENGELMEYER: Look at the dates of those documents when you are deliberating. The date of the indictment, the date of the letter is postmarked August 11, 1975, the letter Myra got that she promptly trotted down to Mr. Carr with. Who's making deals with who? Think about that letter for a minute. Dennis writes to Myra in August, Myra is out, they are both charged at that time. Mr. Reynolds testifies that he was appointed May 1 and that he talked with her regularly following that appointment. That she would sit up there and suggest and say to you that, "I just came clean when I got back to Manchester because

my daddy asked me to." Come on, that is not believable.

Mr. Woodward said, "What does Myra have to gain by giving this version now?" I will tell you what. She got herself off of a murder rap and she has got the method, the story there to put Dennis away, and she has got the farm and she is on her merry way. That's a lot of reason to change the story.

The jury was clearly reminded that Wolfe had made a "deal" and that "she got herself off of a murder rap."

We hold that when the jury retired to deliberate it was fully apprised of any reasons, including the plea bargain, which Wolfe might have had for testifying against Fisher. Applicant is not entitled to a new trial on the basis he urged. *Giglio,* 405 U.S. at 153–54, 92 S.Ct. at 766, 31 L.Ed.2d at 108 (new trial required when promise of nonprosecution made by government to key witness was not disclosed to jury and such evidence could "in any reasonable likelihood have affected the judgment of the jury....."); *see Armento,* 290 N.W.2d at 16; *King,* 256 N.W.2d at 16. The postconviction court is affirmed.

Lastly, we comment on a matter which does not concern the merits of the case. We have recently drawn attention to the recurring appellate rules violation of printing virtually the entire transcript in the appendix. *See State v. Oppelt,* 329 N.W.2d 17, 21 (Iowa 1983) and *Stone v. City of Wilton,* 331 N.W.2d 398, 405 (Iowa 1983). In contrast, the parties to the present appeal have filed a short and concise appendix which could well serve as a model of compliance with Iowa R.App.P. 15(a). The record involved several transcripts and exhibits. The parties, however, in preparing the appendix properly extracted only the portions of the record that were relevant to the issues raised in this appeal. We commend these and all other attorneys who aid the appellate process by their strict adherence to the appellate rules.

AFFIRMED.