**IN THE COURT OF APPEALS OF IOWA**

No. 15-1800
Filed March 8, 2017

**TRACEY ANNE RICHTER,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Sac County, Michael J. Moon, Judge.

Appeal from the denial of application for postconviction relief. **AFFIRMED.**

Julia A. Ofenbakh of Ofenbakh Law Firm, PLLC, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Kyle P. Hanson, Assistant Attorney General, for appellee State.

Heard by Mullins, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

In December 2001, Tracey Richter shot and killed Dustin Wehde in her home. Richter stated she shot Wehde in self-defense during a home invasion. Richter was not charged at that time. Ten years later, a different county attorney, upon learning a new piece of information, charged Richter with murder in the first degree. Richter claimed the homicide was justified, but she was convicted as charged. This court affirmed her conviction on direct appeal. *See State v. Richter*, No. 11-2124, 2013 WL 118357, at *3 (Iowa Ct. App. Jan. 9, 2013). The facts and circumstances surrounding the murder are set forth in our prior opinion and need not be repeated herein. *See id.* at *1–3. This appeal arises out of the district court's denial of Richter's application for postconviction relief. We will set forth additional facts as necessary to resolve the claims in this appeal.

I.

Richter contends her trial counsel provided constitutionally deficient representation in several respects, all in violation of her Sixth Amendment right to the effective assistance of defense counsel. To establish her claim, Richter must prove (1) her trial counsel failed to perform an essential duty and (2) this failure resulted in prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first element requires proof counsel's representation fell below an objective standard of reasonableness. *See id.* at 688. We indulge a strong presumption of counsel's competence. *See id.* at 689. To show prejudice, the movant "must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

at 694. Failure to prove either element is fatal to the appellant's claim. *See King v. State*, 797 N.W.2d 565, 571 (Iowa 2011) ("The applicant must prove both elements by a preponderance of the evidence."). Thus, "[w]e can resolve ineffective-assistance-of-counsel claims under either prong" without having to resolve the other. *State v. Ambrose*, 861 N.W.2d 550, 556 (Iowa 2015); *see also Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015) ("If we conclude a claimant has failed to establish either of these elements, we need not address the remaining element.").

Generally, we review de novo claims of ineffective assistance of counsel. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). Richter argues we should apply a more stringent standard of review because the district court, in denying Richter's application for postconviction relief, adopted the State's proposed findings of fact and conclusions of law almost verbatim. Proposed findings of fact and conclusions of law can be of great assistance to the district court. *See Kroblin v. RDR Motels, Inc.*, 347 N.W.2d 430, 435 (Iowa 1984). However, verbatim adoption of the prevailing party's proposed findings of fact and conclusions of law is frowned upon because "the decision on review reflects the findings of the prevailing litigant rather than the court's own scrutiny of the evidence and articulation of controlling legal principles." *Rubes v. Mega Life & Health Ins. Co.*, 642 N.W.2d 263, 266 (Iowa 2002). In similar circumstances, we have declined to adopt a different standard of review. *See Quality Refrigerated Servs., Inc. v. City of Spencer*, 586 N.W.2d 202, 205 (Iowa 1998). We again decline the invitation to adopt a different standard of review. "We have recognized, however, where a district court adopts a prevailing counsel's

proposed findings of fact and conclusions of law verbatim, we must scrutinize the record more carefully when conducting our appellate review." *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010).

A.

Richter's first claim of error relates to the testimony of Rodney Englert, the State's crime scene reconstruction expert. Richter shot Wehde nine times using two separate firearms. Englert reconstructed the scene and opined on the relative positions of Richter and Wehde at the time of the shooting based on the location of the entry and exit wounds and on the bullet-trajectory evidence. According to Richter, one exhibit Englert discussed used colored dots placed on a model to identify Wehde's entry and exit wounds. One of the dots was placed on the wrong shoulder. The misplaced dot in the exhibit shows a bullet exited Wehde's right shoulder when, in fact, the bullet exited his left shoulder. Richter argues this misplaced blue dot undermined Englert's conclusion and caused him to adopt an unfounded opinion, an opinion contrary to Richter's self-defense theory. Although Richter's defense team recognized the exhibit contained an error, they did not cross-examine Englert on this point and did not mention the mistake until closing argument. Richter argues the failure to cross-examine Englert on the exhibit constituted ineffective assistance of counsel.

Richter has not established a claim of ineffective assistance. First, while Richter is correct the exhibit showed an exit wound on the wrong shoulder, the exhibit was not introduced into evidence by the State. The reconstruction photo with the misplaced exit wound was actually offered into evidence by Richter's counsel. *See State v. Skaggs*, No. 00-1904, 2002 WL 31015241, at *3 (Iowa Ct.

App. Sept. 11, 2002) (holding defendant could not show evidence prejudiced defendant where defendant introduced said evidence). Second, the exhibit did not alter Englert's testimony. Englert's testimony was based on his review of the entry and exit wounds as shown on the autopsy photographs. Englert correctly testified the bullet exited the left shoulder, which is contrary to the exhibit about which Richter complains. Third, counsel could not have breached a duty in failing to cross-examine Englert on an exhibit that was not yet in evidence and upon which Englert's testimony did not rely. Fourth, there is no showing the alleged failure of counsel resulted in prejudice. Contrary to Richter's assertion, both Englert and Dr. Thomas Carroll, the medical examiner, testified the bullet exited through the left shoulder. The medical examiner's report introduced into evidence by the State shows the correct exit wound. The jury saw photograph of Wehde's body with the exit wound on his left shoulder.

In a permutation of the same argument, Richter argues her counsel was ineffective in failing to object to Englert's testimony on the ground the testimony was false and because the State's use of false testimony constituted prosecutorial misconduct. It is well established the State may not knowingly use perjured or false evidence. *See Swartz v. State*, 506 N.W.2d 792, 795–99 (Iowa Ct. App. 1993) (collecting cases). Such "knowing use of perjured testimony . . . must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* at 797 (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)). Richter's misconduct claim fails for similar reasons as her pure ineffective-assistance claim. As noted above, the factual

predicate of Richter's argument is incorrect.  Englert did not provide false testimony.

B.

Richter contends her trial counsel was a necessary witness and should have withdrawn from the representation.  One of the critical pieces of evidence in the prosecution's case was Richter's knowledge of the contents of a pink notebook found in Wehde's vehicle.  As explained in our prior opinion:

> Higgins [Richter's friend] further testified that Richter told her that the police found an older model computer and a pink notebook in the car left in her driveway the night of the purported home invasion.  Richter described to Higgins details of the contents of that pink notebook, which included contact information for her first husband, Dr. John Pitman, with whom Richter was involved in a custody dispute.  Richter told Higgins the notebook would prove her ex-husband was involved.
> There was evidence that the contents of the notebook had been kept from the public by law enforcement, and Richter should not have known what was written in it.  Higgins recounted an incident in 2004 when Richter pointed at Higgins face and told her "to forget about the pink notebook."  The State argued that the contents of the notebook, referring to Richter's ex-husband and his detailed plans to have Richter and Bert killed, came from Richter herself in an attempt to win the custody dispute over Bert.

*Richter*, 2013 WL 118357, at *2.  Richter's lead defense counsel had represented Richter in a wrongful death action brought by Wehde's family after Wehde's death but long before the filing of criminal charges.  During the course of the prior representation, Richter's counsel learned about the existence of the pink notebook during civil discovery.  According to Richter, her statements to Higgins regarding the pink notebook were based on information she learned from her counsel during the civil suit.  Richter contends her criminal defense counsel was thus a necessary witness to establish Richter could have learned of the contents

of the pink notebook in some way other than being involved in staging the home invasion. She contends defense counsel was ineffective in failing to withdraw and testify on her behalf.

Iowa Rule of Professional Conduct 32:3.7 provides guidance on whether and when an attorney should withdraw from continued representation of a client where the attorney is likely to be a necessary witness:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> (1) The testimony relates to an uncontested issue;
> (2) The testimony relates to the nature and value of legal services rendered in the case; or
> (3) Disqualification of the lawyer would work substantial hardship on the client.

The guidelines provided by this rule are "relevant, but not alone dispositive" in determining if a conflict exists. *State v. McKinley*, 860 N.W.2d 874, 881 (Iowa 2015).

Richter's trial counsel had no duty to withdraw under the circumstances. An attorney is a necessary witness "only if 'there are things to which he will be the only one available to testify.'" *United States v. Melton*, 948 F. Supp. 2d 998, 1006 (N.D. Iowa 2013) (citation omitted). In this case, trial counsel was not the only person available to testify regarding Richter's knowledge of the notebook allegedly gained through civil discovery. Richter's mother testified Richter learned of the notebook during the wrongful death action. Trial counsel also was not a necessary witness because his testimony was immaterial to the relevant issue. The pink notebook was relevant to the prosecution's case because Richter expressed knowledge of the contents of the pink notebook, which were never disclosed to the public. Richter's trial counsel testified he learned of the

existence of the notebook during discovery but the contents of the notebook were never revealed to him. Richter's defense counsel's proposed testimony would not have contradicted the prosecution's case or bolstered Richter's factual claim.

We also conclude trial counsel had no duty to withdraw because withdrawal would have worked a substantial hardship on Richter. The defense team pursued a strategy of getting to trial as quickly as possible because they believed the prosecutor seemed unprepared for trial. The lead defense counsel had extensive knowledge of the case because of his work representing Richter during the wrongful death suit. *See State v. Vanover*, 559 N.W.2d 618, 634 (Iowa 1997) (stating "a long-standing professional relationship could conceivably create a situation where an attorney has an extraordinary and irreplaceable familiarity with the affairs of his client"). The hardship issue was indirectly addressed during Richter's criminal trial when the potential conflict was disclosed. The issue was resolved at that time to Richter's satisfaction.

There is also no reasonable probability counsel's testimony would have changed the result at trial. His testimony would have been cumulative to Richter's mother's testimony. *See Taylor v. State*, 352 N.W.2d 683, 687 (Iowa 1984) (holding "the withholding of cumulative testimony will not ordinarily satisfy the prejudice component of a claim of ineffectiveness of counsel"). Further, as noted above, trial counsel's testimony would not have contradicted Higgins' testimony or the State's theory of the case. Trial counsel was unequivocal in stating he never learned the contents of the pink notebook during the civil proceeding. He thus could not have served as the source of Richter's

knowledge.  Finally, there was overwhelming evidence of Richter's guilt.  *See Richter*, 2013 WL 118357, at *3–4 (discussing evidence against Richter).

C.

Richter contends her trial counsel was ineffective because the district court was aware of trial counsel's purported conflict of interest.  Richter does not meaningfully develop this claim.  She cites two cases with no additional argument.  *See* Iowa R. App. P. 6.903(2)(g)(3).  One case is factually distinguishable as it concerns the court's duties when one attorney represents multiple defendants.  *See Cuyler v. Sullivan*, 446 U.S. 335, 346–47 (1980).  The other case requires a court to inquire further to satisfy due process if it suspects a conflict of interest.  *See Wood v. Georgia*, 450 U.S. 261, 272–74 (1981).  Here, we have a single defendant and a court that *knew* (not suspected) of the alleged conflict and satisfied itself of any due process concern after holding a hearing on the record.  Regardless, this claim was not resolved by the district court and thus has not been preserved for appellate review.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

III.

Richter contends the prosecutor engaged in misconduct in violation of Richter's right to due process.  "A prosecutor 'is not an advocate in the ordinary meaning of the term.'"  *State v. Graves*, 668 N.W.2d 860, 870 (Iowa 2003) (quoting 63C Am. Jur. 2d *Prosecuting Attorneys* § 1 (1997)).  The prosecutor owes a duty to do justice for the accusers and the accused.  *See id.*  "The prosecutor's duty to the accused is to 'assure the defendant a fair trial' by

complying with 'the requirements of due process throughout the trial.'" *Id.* (quoting *DeVoss v. State*, 648 N.W.2d 56, 64 (Iowa 2002)).

To establish a due process violation, the defendant must establish prosecutorial misconduct or prosecutorial error. *See id.* at 869. "Prosecutorial misconduct includes those statements where a prosecutor intentionally violates a clear and unambiguous obligation or standard imposed by law, applicable rule or professional conduct, as well as those situations where a prosecutor recklessly disregards a duty to comply with an obligation or standard." *State v. Schlitter*, 881 N.W.2d 380, 394 (Iowa 2016) (quotations omitted). Prosecutorial error, in contrast, occurs "where the prosecutor exercises poor judgment and where the attorney has made a mistake based on excusable human error, despite the attorney's use of reasonable care." *Id.* (quotations omitted). "A prosecutor who has committed error should not be described as committing misconduct." *Id.* "Evidence of the prosecutor's bad faith is not necessary, as a trial can be unfair to the defendant even when the prosecutor has acted in good faith." *Graves*, 668 N.W.2d at 869.

Whether the claim is one for prosecutorial misconduct or prosecutorial error, the defendant must establish the misconduct or error "resulted in prejudice to such an extent that the defendant was denied a fair trial." *Id.*; *see also Schlitter*, 881 N.W.2d at 394 (concluding the *Graves* standard applies whether the claim is prosecutorial misconduct or prosecutorial error). The prosecutor can deny the accused a fair trial in a variety of ways. *See Schlitter*, 881 N.W.2d at 393 (identifying a "range of trial conduct" constituting prosecutorial misconduct). Whatever the conduct, "it is the prejudice resulting from misconduct, not the

misconduct itself, that entitles a defendant to a new trial." *State v. Piper*, 663 N.W.2d 894, 913 (Iowa 2003), *overruled on other grounds by State v. Hanes*, 790 N.W.2d 545 (Iowa 2010). Because Richter alleges a violation of her due process rights, our review is de novo. *See In re Det. of McCurry*, No. 11-0297, 2012 WL 664506, at *2 (Iowa Ct. App. Feb. 29, 2012).

A.

Richter first claims her right to a fair trial was infringed when the prosecutor failed to correct Englert's testimony as to the misplaced blue dot. We disagree. We reiterate Englert's testimony was correct as to the placement of the exit wound, and we reiterate the error appeared only in an exhibit offered into evidence by the defense. *See Graves*, 668 N.W.2d at 869; *see also Martin v. State*, No. 12-2240, 2014 WL 69542, at *9 (Iowa Ct. App. Jan. 9, 2014) (examining defendant's role in eliciting prosecutor's allegedly improper argument). To the extent any error could be attributed to the prosecutor, there was substantial evidence in the record to contradict any error such that the jury was not misled. *See Graves*, 668 N.W.2d at 869; *Fisher v. State*, 337 N.W.2d 212, 215 (Iowa 1983). Englert testified to the correct placement of the dot, and the mistake was eventually pointed out during closing argument. *See State v. Krogmann*, 804 N.W.2d 518, 526 (Iowa 2011) ("Prejudice can, but usually does not, result from isolated prosecutorial misconduct.").

B.

Richter claims the prosecutor failed to produce evidence that could have been used to impeach Englert. To establish this claim, Richter must prove by a preponderance of the evidence (1) the prosecution suppressed evidence; (2) the

evidence was favorable to the defendant; and (3) the evidence was material to the issue of guilt. *See DeSimone v. State*, 803 N.W.2d 97, 103 (Iowa 2011). Impeachment evidence is considered favorable to the defendant. *Id.* at 105.

Richter points to two specific pieces of evidence: a civil lawsuit in which Englert sued several colleagues for defamation and the testimony in a criminal trial in which Englert testified as an expert. The criminal trial resulted in a conviction, but was subsequently vacated when a third party confessed; however, the third party then recanted, and the initial defendant was retried. A cursory search by the prosecutor's office discovered the civil lawsuit; Richter contends that discovery should have prompted additional investigation, which could have uncovered the criminal case in which, Richter contends, Englert provided false testimony leading to a wrongful conviction.

A prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). This is because "the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached." *Id.* Here, the information was publicly available. Richter seems to contend the prosecutor has the affirmative obligation to access publicly available information that might be related to any persons the State intends to call as witnesses and then provide the information to the defendant. We reject her attempt to impose this duty upon the prosecutor. Publicly available information, by definition, is not suppressed. *See United States v. Pendleton*, No. 15-2865, 2016 WL 4254946, at *2 (8th Cir.

2016); *Johnson v. United States*, 860 F. Supp. 2d 663, 852–54 (N.D. Iowa 2012); *State v. Clark*, 814 N.W.2d 551, 563 (Iowa 2012); *Parker v. State*, No. 12-1972, 2014 WL 1746563, at *5 (Iowa Ct. App. Apr. 30, 2014).  Richter's claim fails.

Nor is the evidence material to the issue of guilt.  "[E]vidence is material when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *DeSimone*, 803 N.W.2d at 105 (citation omitted).  Inconsistencies "used to impeach a witness must involve 'substantive evidence' of the defendant's guilt or innocence." *Aguilera v. State*, 807 N.W.2d 249, 255 (Iowa 2011).  Englert filed a defamation lawsuit he ultimately dismissed.  The defamation suit has no relevance to Englert's credibility.  Englert's expert testimony at another trial resulted in a conviction that has now been called into question.  It is not at all likely the evidence of Englert's testimony in another criminal case whose result— although in doubt—is not in Englert's purview would have been admitted to show his alleged dishonesty.  *See* Iowa R. Evid. 5.608; *State v. Wolfe*, 316 N.W.2d 420, 422 (Iowa Ct. App. 1981) ("[M]atters upon which impeachment is attempted must be relevant to some issue in the case.").  Even if it could be shown, somehow, Englert offered untruthful testimony at the prior trial, one specific incident of misconduct is insufficient to prove "character" for truthfulness or untruthfulness.  *See State v. Greene*, 592 N.W.2d 24, 28 (Iowa 1999); *see also* Iowa R. Evid. 5.608.  There is no reasonable probability this evidence would have changed the result of the proceeding.

IV.

Richter contends her appellate counsel also provided ineffective assistance. Claims of ineffective assistance of counsel are reviewed de novo. *Straw*, 709 N.W.2d at 133. Where such claims involve appellate counsel, they are judged using the same legal standard involving ineffective-assistance claims involving trial counsel. *Ledezma*, 626 N.W.2d at 141. The defendant must show counsel "failed to raise an issue that reasonably competent counsel would have raised." *Miller v. State*, No. 12-0826, 2014 WL 1746572, at *1 (Iowa Ct. App. Apr. 30, 2014). To establish prejudice, Richter must show she would have prevailed on direct appeal but for appellate counsel's deficient performance. *See Ledezma*, 626 N.W.2d at 141.

A.

Richter alleges her appellate counsel was ineffective for failing to raise a hearsay objection to the pink notebook. This is not an issue reasonably competent appellate counsel would have raised. The pink notebook contained biographical information about Richter's first husband and assertions he had hired the notebook's author, Wehde, to kill Richter. The State offered the notebook into evidence to prove Richter had knowledge of the contents of the notebook—without regard to whether the contents were true or false—to show she had worked with Wehde to stage the home invasion. The notebook was not admitted to prove the truth of those statements and thus was not hearsay. *See* Iowa R. Evid. 5.801(c); *see also State v. Hartman*, No. 14-0727, 2015 WL 4642276, at *7 n.2 (Iowa Ct. App. Aug. 5, 2015); *Schwebke v. State*, No. 07-1027, 2009 WL 605823, at *13 (Iowa Ct. App. Mar. 11, 2009). In fact, it was the

State's theory that the murder-for-hire assertions were *false*; if anything, the State hoped to show the falsity of the statements contained in the notebook.

B.

Richter alleges her appellate counsel was ineffective for failing to raise the issue of a crime scene report being redacted improperly. Inadmissible hearsay in the report was redacted. Iowa Code section 691.2 provides for admission of hearsay within government reports: "Any report . . . of the criminalistics laboratory shall be received in evidence . . . in the same manner and with the same force and effect as if the employee or technician of the criminalistics laboratory who accomplished the requested analysis, comparison, or identification had testified in person." Iowa Code § 691.2; *see also State v. Casady*, 597 N.W.2d 801, 807 (Iowa 1999). But the statute does not provide for double hearsay, triple hearsay, or just rank old hearsay—such as the statements at issue here—to be admitted. *See* Iowa R. Evid. 5.805; *State v. Puffinbarger*, 540 N.W.2d 452, 455 (Iowa Ct. App. 1995) ("Where a hearsay statement includes a further hearsay statement, both statements must conform to a hearsay exception for the statement to be admissible."). This claim is not one reasonably competent counsel would have brought.

C.

Richter alleges her appellate counsel was ineffective for failing to argue the trial court erred in excluding evidence regarding the wrongful death suit. That suit was dismissed with prejudice, which Richter claims is persuasive insofar as Wehde's estate failed to establish wrongful death under a lower burden of proof. The result of the civil proceeding has no relevance here. Res judicata does not

apply where the cases do not involve the same parties or parties in privity, the same cause of action, and the same issues. *See Bennett v. MC No. 619, Inc.*, 586 N.W.2d 512, 516 (Iowa 1998). The State had no control over the prosecution of the civil suit. *See Harris v. Jones*, 471 N.W.2d 818, 820 (Iowa 1991). That a different party in a different case failed to meet a different evidentiary burden in establishing different elements has no bearing on this criminal case. Richter also raises several administrative reasons why the district court should have allowed evidence regarding the civil suit. We find the arguments unpersuasive. Appellate counsel was not ineffective in failing to assert a claim without merit. *See State v. Halverson*, 857 N.W.2d 632, 635 (Iowa 2015) ("Counsel, of course, does not provide ineffective assistance if the underlying claim is meritless.").

D.

Richter claims her appellate counsel was ineffective for failing to argue trial counsel was ineffective in failing to object successfully to the admission of a statement by Richter's son, Bert Pitman. This argument is also without merit. Trial counsel did object to the testimony on hearsay grounds, but the district court overruled the objection. Appellate counsel would not have succeeded in arguing trial counsel was constitutionally ineffective for not objecting more strongly to the challenged statement.

"The right to effective assistance also applies to counsel on appeal. As with trial counsel, an attorney is allowed to determine the strategy to use and is not required to raise every colorable issue at the risk of burying good arguments." *Foster v. State*, 378 N.W.2d 713, 717 (Iowa Ct. App. 1985). We will not second-

guess appellate counsel's choice to forego a losing argument at the expense of the arguments actually presented on direct appeal.

## V.

Richter claims the cumulative effect of her assigned errors was prejudicial. Because we find no merit to her allegations, there is no cumulative error. *See State v. Burkett*, 357 N.W.2d 632, 638 (Iowa 1984).

## VI.

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**